### OCONTO CO. *v.* LUNDQUIST.

1. Vendor and Purchaser—Sale of Timber—Notice.

   A vendee of land the timber on which had previously been sold to another cannot hold the same as a *bona fide* purchaser, where he paid much less than the timber was worth, and where he visited the land prior to his purchase, and saw a freshly-cut logging road thereon, connecting with the main road and camp of the former purchaser, whom he knew to be getting out logs in the vicinity.

2. Same—Construction of Contract.

   Under an agreement for the sale of timber giving the purchaser permission to cut and remove it at any time prior to a specified date, "with privilege of another year if needed to remove timber," the purchaser to have no claim or ownership in any timber not removed previous to such date, the purchaser has a year from the date specified within which to remove the timber from such portions of the land as cannot, with reasonable diligence, be lumbered prior to that date.

3. Same—Statute of Frauds—Specific Performance.

   A vendee of land with notice of the rights of a prior purchaser of the timber thereon will be enjoined from prosecuting an action at law against the latter to recover for the timber removed by him, even though the former transaction was insufficient under the statute of frauds, where the circumstances are such as would have entitled the claimant thereunder to a specific performance.

Appeal from Dickinson; Stone, J.   Submitted October 21, 1898.   Decided January 20, 1899.

Bill by the Oconto Company against Alfred Lundquist and Charles Fridstrom to declare the priority of complainant's title to certain timber, and to restrain the prosecution of an action of trespass. From a decree dismissing the bill, complainant appeals. Reversed.

*Sawyer & Waite*, for complainant.

*Cook & Pelham*, for defendants.

HOOKER, J. The Peninsula Iron & Lumber Company, a Michigan corporation, owned a large tract of timber land in Michigan, including the 40-acre parcel in question. A copartnership consisting of James B. and Robert F. Goodman, doing business under the name of James B. Goodman & Co., were the agents of the Peninsula Iron & Lumber Company, though it does not appear that their authority was in writing. On October 25, 1894, this firm executed and delivered to complainant, a Wisconsin corporation, a writing which was as follows:

"LIMITED PERMIT TO CUT TIMBER.
"No. 665.   Expires June 1, 1895.
"LAND OFFICE OF JAMES B. GOODMAN & CO., CHICAGO.
"Received of the Oconto Company three thousand six hundred (3,600) dollars, in consideration of which *we hereby grant to them permission to cut and remove at any time previous to the first day of June, A. D. eighteen hundred and ninety-five (1895), with privilege of another year if needed to remove timber, all or any part of the pine timber now upon the following described land*, in the county of Dickinson and State of Michigan, to wit: [Here follow descriptions aggregating 640 acres.] Said pine timber to be cut and removed without destruction of other merchantable timber upon said land; and the said Oconto Company shall have no claim or ownership in any of said timber that shall not be removed from said land previous to said date, and no claim of reversion or return of any of the money consideration herein expressed, but all such timber remaining on said land at said date shall be the property of the own-

ers of said land, as fully as if this permit had not issued.
  "Witness our hand and seal October 25, 1894.
                    "JAS. B. GOODMAN & CO.     [Seal]
  "We hereby fully consent and agree to the conditions
expressed in the foregoing permit.
                    "_____  _____     [Seal]"

At the same time they received $3,600, as the full pur-
chase price of the timber mentioned therein.    This writing
was recorded, although not acknowledged.

The complainant subsequently made a contract with one
Porterfield, whereby he agreed to cut the timber for the
complainant within two years, and he proceeded to do the
work.    In September, 1895, he began the construction of
a logging road upon the 40 acres in question, connected
with his main logging road, which ran through other
portions of the tract, which main road led to the railroad.
On December 17, 1895, the Peninsula Iron & Lumber
Company sold and conveyed to the defendants, by war-
ranty deed, the 40 acres in dispute, for $120 in cash, who
claim that they had no notice of the contract previously
made with the complainant.    Their deed was recorded
after notice of complainant's claim.    Porterfield subse-
quently removed the pine timber under his contract with
the complainant, whereupon the defendants brought an
action against the complainant to recover treble damages,
under the statute (2 How. Stat. chap. 272).    The com-
plainant tendered to the defendants the amount paid by
them for the land, with interest, and asked them to deed
the land to it.    This being refused, complainant filed a
bill praying a decree that the defendants' deed should be
held to be subject to the contract, and that the action at
law be restrained.    The bill was dismissed, and the com-
plainant has appealed.

The questions raised by the record are stated by the
appellant to be the following:

  "1.  Did the complainant obtain a title to the timber men-
tioned in the contract, which included the S. E. ¼ of the
S. W. ¼ of section 23, township 42 north, of range 30

west, or such an interest, equitable or otherwise, that it could be enforced by a court of equity?

"2. Does the contract of sale of timber between the Peninsula Iron & Lumber Company and the Oconto Company give the Oconto Company two years in which to remove the timber?

"3. Was the building of the camps and roads on the timber land for the purpose of removing the timber purchased by the Oconto Company from the Peninsula Iron & Lumber Company, and the running of the branch road onto the 40 in question, under all the circumstances, such a notice of possession as would put Lundquist and Fridstrom on inquiry?

"4. Has a court of chancery the power to set aside a subsequent deed for value paid, when first recorded, if given through mistake of grantor, and if prior grantee tendered subsequent grantee the purchase price, with interest from the date of purchase?"

The testimony shows that the Goodmans acted exclusively as agents of the Peninsula Iron & Lumber Company in disposing of its timber and land. They made the sale to the defendants, though the conveyance was executed by the officers, and we think that the evidence shows that they were permitted by the Peninsula Iron & Lumber Company to act for it in all such matters. We do not discover any affirmative evidence that they were not authorized in writing to sell timber; but, whether they were or not, there is no doubt that the sale to the complainant was acquiesced in by the Peninsula Iron & Lumber Company, and that the land was subsequently sold and conveyed to the defendants for an inadequate price, upon the mistaken belief that the pine had been removed by the complainant under its contract. Immediately after its purchase of the timber, the complainant's agents entered upon the tract, and made extensive inroads upon the pine. Its logging roads were extended to and upon the lot in question before its purchase by the defendants. The defendant Lundquist was a section foreman on the railroad, and, according to Porterfield's testimony, he was engaged in building a side track for Porterfield's landing at the time Porterfield was constructing the logging

road, and knew that Porterfield was getting out timber in that region. He was in the habit of bringing Porterfield's mail daily. Both defendants testified that they did not know that Porterfield was working on the lot in question. Lundquist was a railroad boss, and Fridstrom was a miner. Both say they were used to the woods, and Fridstrom says that their business on that 40 was looking for pine. If that is so, the letter from Lundquist proposing to buy the tie timber and spruce was not ingenuous. The letter is as follows:

"Randville Station, Dec. 4, 1895.
"J. A. Van Cleve,
        "Marinette, Wis.
    "*Dear Sir:* Would please let me know if stumpage can be bought on the E. ½ of the N. W. ¼ of the N. E. ¼, all in Sec. 23, T. 42, R. 30, Dickinson Co., Mich. I would like to buy the tie timber and spruce on the above description land, if sold at a reasonable price.
                "Respectfully,
                        "Alf. Lundquist.
    "If you have any maps of the Upper Menominee, please let me know the price of same, so I can send and get one.                A. L."

We also insert the remainder of the correspondence:

"Marinette, Wis., Dec. 5, 1895.
"Alf. Lundquist, Esq.,
        "Randville, Mich.
    "*Dear Sir:* Yours of December 4th received. The stumpage is not for sale, separate, on the tracts described in your letter. *We do not, however, place any particular value in the land.* Inclosed is a diagram of 42–30 for the prices of each 40 for warranty deed, except the mineral rights. If you desire to secure either or all of the tracts noted in your letter, please advise me at once. A map of the Upper Menominee country, mounted on cloth, will cost you 50 cents. If you will remit same, will mail you one.                Yours truly,
                "J. A. Van Cleve."

"Division, Randville Station, Dec. 15, 1895.
"J. A. Van Cleve, Esq.,
        "Marinette, Wis.
    "*Dear Sir:* Yours of December 5th received, regard-

ing the land in Sec. 23–42–30, S. E. of S. W. Price marked on the diagrams is $120.00, which you will find inclosed in this letter. If you please, send us deed for same tract described.

"Yours respectfully,

"ALFRED LUNDQUIST & CHAS. FRIDSTROM,

"Randville, Mich."

The testimony shows that there was pine upon the land worth from $350 to $500 stumpage, and the testimony of Van Cleve indicates that there was considerable hemlock and other mixed timber upon it; and it is also shown that at the time the defendants visited the lot, looking for pine, a freshly-cut logging road had been made, which connected with the main road and camps of Porterfield. We are fully convinced that the defendants had knowledge of Porterfield's business in that region, and think there was sufficient notice of occupation of the lot to put a reasonably prudent man upon inquiry, and, therefore, that the purchase was not *bona fide.*

We are of the opinion that the timber contract should be construed to mean that the complainant should have two years within which to remove the timber from such portions of the land as could not be conveniently lumbered the first season, and that the showing of diligence was sufficient, under the provision, which was that permission was given to cut and remove timber at any time previous to the 1st day of June, 1895, "with privilege of another year if needed to remove timber."

Had the Peninsula Iron & Lumber Company remained the owner of the premises, and commenced the action for trespass, we should have no hesitation in saying that the contract for the sale of the timber was made by it, though, not being executed by one whose authority appeared to be in writing, it was inadequate, under the statute of frauds, to convey title to the standing trees. In view, however, of the full payment of consideration, and the work done by the complainant in reliance upon it, we should consider the contract valid in equity, as a parol contract partly, if not fully, performed; and we

should confirm the complainant's title to the timber cut, and enjoin the prosecution of the trespass case. The defendants have succeeded to the title of the Peninsula Iron & Lumber Company as to the 40 acres described, but subject to whatever legal or equitable rights the complainant had in the premises. Had they prevented the complainant from entering and removing the timber after preparations had been made to do so, we should, upon a proper bill filed for the purpose, have specifically enforced this contract, by requiring them to permit the complainant to remove the timber. But they did not prevent the removal of the timber. They waited until it was removed under a claim of right, and then commenced an action, punitory in its nature, to recover three times as much as their actual damage amounted to, upon their own theory. Under these circumstances it is only necessary to ascertain whether the contract was one which should have been enforced, and, if so, to restrain the prosecution of the action of trespass. We think the conduct of the defendants has been unconscionable. They should have permitted the complainant to take the timber, or accepted the offer of reimbursement.

The decree of the circuit court is reversed, and a decree will be entered in this court validating the contract for the sale of timber as a parol contract wholly performed, and adjudging defendants' deed to be subject thereto, and perpetually enjoining the defendants from further prosecuting their action of trespass, or in any manner attempting to recover for the timber cut and removed, or any damages therefor. The complainant will recover costs of both courts.

GRANT, C. J., MOORE and LONG, JJ., concurred. MONTGOMERY, J., took no part in the decision.