## FRASER v. FLEMING.

1. PRINCIPAL AND SURETY—SUBROGATION—CONSTRUCTION—BONDS— BUILDING CONTRACTS.

A surety on the bond of a contractor who defaulted in the performance of the agreement to build houses and transfer free from incumbrance with the land on which they were built to the obligees in the bond was entitled, upon performing its obligation, to equal rights with the purchaser and to the same standing in a court of equity on the question of foreclosure; the surety did not become affected with any wrong done by the contractor whom it guaranteed.

2. MORTGAGES—PRIOR RIGHTS—NOTICE—POSSESSION.

Possession of the premises by a contract purchaser is constructive notice of his rights as to a subsequent mortgagee and, therefore, where the buyers of a lot and house which was constructed thereon for them, paid up the purchase price and started to move on the property, leaving some furniture upon the premises at the time the contractor, vendor, arranged for a loan secured by a mortgage on the property, and where they actually began living there the night before the money was advanced on the mortgage, the mortgagee was not in the position of a subsequent good faith lienor, but was charged with constructive notice of the rights of the parties in occupancy. Nor was possession retained by the contractor because it was shown that a painter whom he had employed was engaged in painting the house at the time the owners moved in, and later when the money was advanced on the mortgage.

3. SUBROGATION—EQUITY—MORTGAGEE'S RIGHTS.

Since subrogation is a creature of equity it must be enforced with a due regard for the rights, legal or equitable, of others. It cannot be invoked so as to work injustice or defeat a legal right or overthrow a superior or perhaps an equal equity or displace an intervening right or title.

4. SAME—PRIORITY.

The mortgagee having advanced money to the contractor aforesaid, who used it to pay up the balance due upon a prior purchase and to adjust certain materialmen's claims, was not entitled to priority over the grantee of the premises who was in possession at the time the loan was made and the mortgage lien took effect; the contractor agreeing to give to the buyer a clear and unincumbered title.

Appeal from Muskegon; Sullivan, J. Submitted October 12, 1915. (Docket No. 58.) Decided March 30, 1916.

Bill by Frederick L. Fraser against R. Andrew Fleming, trustee for Helen H. Littell, to set aside a mortgage. From a decree for defendant, complainant appeals. Reversed.

*Miller, Smith, Canfield, Paddock & Perry,* for complainant.

*Cross, Vanderwerp, Foote & Ross,* for defendant.

PERSON, J. This case involves a question of priority between the complainant, as assignee of a contract purchaser of lot 6, block 97, in the city of Muskegon Heights, and defendant, as mortgagee of the same lot. The facts which give rise to the controversy are, in substance, as follows: On the 30th day of June, 1913, Samuel W. Carpenter and his wife, Esther M. Carpenter, entered into a contract for the purchase of the lot from one Orrin Trimble. Trimble himself at that time held only a contract for the lot from Will M. Dodge, who owned the legal title. The contract between the Carpenters and Trimble provided for the transfer of the Carpenters' farm to Trimble, at an agreed valuation of $9,000, in consideration whereof Trimble was to build a house upon lot 6, and one upon each of three other lots, and convey each lot to the Carpenters free and clear of incumbrance as soon as the house thereon should be completed. The first house was to be finished within 60 days from the date of the contract, and they were all to be completed within 120 days. The farm of the Carpenters, however, was not to await the completion of the houses, but was to be conveyed to Trimble whenever he should furnish them a satisfactory bond for the performance of his part of the contract. Such bond was, in fact, furnished by Trimble soon after the making of the contract with the American Surety Company, of New York, as surety thereon; and he received a conveyance of the Carpenters' farm.

Trimble was slow in the performance of his part of the contract. The first of the houses undertaken by him, it seems, was the house on the lot in question. Instead of completing it within the 60 days promised,

it dragged along for more than a month after that. The Carpenters, who had parted with their farm to Trimble, grew impatient, and some correspondence ensued. They were finally informed by Trimble that they could come to the city, and that the house would be ready for them on the 30th day of September. They brought their goods to the house on the 1st or 2d day of October, but it was not completed so that they could move in. They thereupon put their stove and some furniture upon the porches, and stayed with the Trimbles. The workmen, except the painters, finished during the forenoon of the 4th, which was Saturday. The Carpenters insist that they moved into the house on the afternoon of the 4th, and from that time continued to live there. This is disputed by Mrs. Trimble and the mechanic who had worked on the house, and by the latter's wife. But, however that fact may be, it is conceded by all that the Carpenters were living in the house on the night of October 7th, and resided in it from that time on.

While the Carpenters were getting into the house, as has been described, Trimble, without their knowledge, was negotiating with defendant for a loan, to be secured by a mortgage on the property. The terms of the loan were agreed to on Saturday, the 4th, and the mortgage was drawn on that day, but it was not acknowledged until the 7th, and none of the money loaned upon it by defendant was paid over until the forenoon of the 8th. The delay was occasioned by the necessity of obtaining a deed from Dodge to Trimble in performance of their contract. This deed was obtained and recorded on the 7th, upon defendant's oral promise to Dodge that he would pay him the balance of the purchase price, $138.51, due from Trimble, out of the money to be loaned. The payment to Dodge was not made, however, until the 8th. On the same day

defendant paid to one Moore $377.53 for material used by Trimble in building the house. These two payments, amounting to $516.04, together with the mortgage tax, the fee for recording the mortgage, the fee for recording the Dodge deed, and the brokerage fee of $27.50, divided by defendant between himself and his agent, made up the sum of $550, which, by the terms of the mortgage, was to be paid to defendant in three years, with interest at 7 per cent., payable semi-annually.

It is evident that defendant himself had no actual knowledge when he paid the money that the Carpenters were in, or had any right to, the house. His agent, who visited the premises on the 3d, in contemplation of the loan, admits seeing the stove, and perhaps other property of the Carpenters, on the porch, but says that it did not occur to him that they might belong to some one other than Trimble, and he made no inquiries. The agent also says that he was around the house after that, but saw nothing to cause a suspicion that some third party might have an interest in the place. Certainly the Carpenters knew nothing about the making of the loan or the giving of the mortgage. Mr. Carpenter testifies that he was importuning Trimble for a deed, and that Trimble promised to give him one; but Trimble, instead of doing so, upon some night during the proceedings quietly disappeared from the vicinity. Later the security company, as required by the bond, settled with the Carpenters for Trimble's default, and, as a part of such settlement, took from the Carpenters a conveyance of their interest in and rights to the lot in question, the conveyance being made to complainant, who is resident vice president of the company. Afterwards, but before the suit was begun, complainant also secured a conveyance from the Trimbles, in whom the record title yet remained.

Claiming to have succeeded to all of the rights of

the Carpenters, complainant, by his bill of complaint, asks that the mortgage be set aside as a cloud upon his title; while the defendant, by cross-bill, prays for its foreclosure. The circuit court, being of the opinion that the possession by the Carpenters was not such as amounted to constructive notice of their rights, dismissed the original bill, and granted the foreclosure sought by the cross-bill. Complainant appeals to this court.

In determining the rights of the parties upon these facts, notice should be first taken of a suggestion in behalf of defendant that complainant, as representing the surety upon Trimble's bond, has not the same standing before the court that the Carpenters would have had. The implication is that the surety, in guaranteeing Trimble's performance of the contract, is in some way tainted by Trimble's wrong. Counsel have not given any reason for such a view of the matter, and we have not been able to discover any. The surety's obligation was wholly for the benefit of the Carpenters, and not at all for the benefit of defendant; and, having fulfilled the obligations, there is no apparent reason why it may not succeed to their rights.

The Carpenters held a contract for the lot which antedated defendant's mortgage by a considerable period of time, and they had fully paid the purchase price, but the contract had not been recorded, and defendant had no actual notice of its existence. The question therefore is whether their possession of the lot was of such a character as to amount to constructive notice when defendant parted with the money loaned on the mortgage.

"The rule uniformly settled in this State is that payment must be made before notice in order to secure the title to the land purchased." *Palmer* v. *Williams*, 24 Mich. 328.

See, also, 39 Cyc. p. 1763.

And—

"possession of land by a contract purchaser is constructive notice of his rights." *Corey* v. *Smalley*, 106 Mich. 257 (64 N. W. 13, 58 Am. St. Rep. 474).

Defendant testified that the money loaned was paid to Trimble's creditors on the morning of the 8th, after the deed from Dodge had been recorded, and the deed was recorded at 10:45 a. m., as shown by the register's certificate. It is practically undisputed that the Carpenters had supper in the house on the evening of the 6th, and that their goods were in the house by the evening of the 7th, when they began living there regularly and continually. We cannot agree with the circuit judge that this possession was insufficient to operate as constructive notice. What more notorious and open possession could they have taken? Their goods were in the house, they were eating and sleeping there, and any one calling at the house would have found them there on the day the money was paid, and on the night before. They were there under and by virtue of their contract rights, and by the consent of Trimble, who had turned the house over to them. The presence of a painter employed by Trimble to paint the outside of the house did not amount to a retention of possession by him. The possession by the Carpenters was in the best of faith, and not for the purpose of defrauding defendant; and, although it had not existed for any great length of time before the payment of the money, it had existed for a sufficient period to operate as constructive notice. *Allen* v. *Cadwell*, 55 Mich. 8 (20 N. W. 692) ; *Miner* v. *Wilson*, 107 Mich. 57 (64 N. W. 874) ; *Oconto Co.* v. *Lundquist*, 119 Mich. 264 (77 N. W. 950) ; *Boyer* v. *Chandler*, 160 Ill. 394 (43 N. E. 803, 32 L. R. A. 113) ; *Phelan* v. *Brady*, 119 N. Y. 587 (23 N. E. 1109, 8 L. R. A. 211). Constructive notice by possession is equal to constructive notice by record. 39 Cyc. p. 1745. The mortgage was therefore void in equity as against the rights of the Carpenters, and is

equally void as against complainant, who has succeeded to those rights.

It is further argued, however, for defendant, that he is entitled to certain rights of subrogation, if it is found that the possession by the Carpenters was sufficient to operate as constructive notice of their interest in the premises. The money loaned by him to Trimble was used, to the extent of $138.51, in payment of the balance due from Trimble to Dodge, the holder of the legal title. And $377.53 of the money was applied in cancellation of Moore's claim for material used in building the house. These, it is urged, were prior liens upon the property, which the Carpenters would have had to pay to protect their rights, and that they will not be injured in any way if defendant is subrogated to these claims thus paid out of his money.

But there seem to be insuperable objections to the application of the principles of subrogation to the facts of this case. It has been said:

"Since subrogation is a creature of equity, it must be enforced with a due regard to the rights, legal or equitable, of others. It cannot be invoked so as to work injustice, or defeat a legal right, or overthrow a superior or perhaps even an equal equity, or displace an intervening right or title." 99 Am. St. Rep. 480, note.

The defendant cannot be subrogated to the claims mentioned without imposing upon the Carpenters, or their grantee, obligations they were and are under no legal duty to assume. By their contract the Carpenters were to have the lot free and clear of incumbrance, and they had paid the purchase money in full. It was no more their duty to pay Mr. Dodge or Mr. Moore than it was the duty of defendant; and it is no more their duty to bear the loss now than it is his. Nor is it as much their duty; for the Carpenters were in possession when defendant paid the money, and he had

notice of their right to hold the premises free and clear of the liens he was paying. He made the payments at Trimble's request, not at theirs; and they were not consulted as to their willingness that the form of the obligations should be changed to a mortgage for three years upon their lands. Nor can it be assumed that Trimble might not have performed his duty to the Carpenters in some way if the loan had not been made. Their rights in the situation became vested when Dodge transferred the legal title to Trimble, and cannot now be changed by subrogation. The case comes within the principles of *Kitchell* v. *Mudgett,* 37 Mich. 81, and *Gerber* v. *Upton,* 123 Mich. 605 (82 N. W. 363).

The view taken makes it unnecessary to consider the question of usury raised by complainant, or the fact that there were no covenants of warranty in defendant's mortgage. And no other or further points were argued.

The decree will be reversed, and one entered granting the prayer of the original bill and dismissing the cross-bill. Complainant will recover costs of both courts.

Stone, C. J., and Kuhn, Ostrander, Bird, Moore, Steere, and Brooke, JJ., concurred.