MARION MORTGATE COMPANY, a Florida Corporation, as Trustee, *Appellant,* vs. JOHN G. GRENNAN, et al., *Appellees.*

143 So. 761.

Opinion filed October 4, 1932.

*Redfearn & Ferrell,* for Appellant;

*Donald Nelson* and *Wilson Trammell,* for Appellees.

ANDREWS, Commissioner.—This cause is here upon appeal from an order of the Circuit Court dismissing a bill of foreclosure, filed by the appellant as assignee of the mortgage which had been placed upon improved real estate by the owner (mortgagor) after said owner executed and delivered a contract for deed on the same property to a purchaser who had, at the time of said mortgage, been in adverse possession and occupancy for nearly two years without default.

The main facts, in substance, are that the Merchants Realty Company, hereinafter called the "original owner," on May 17, 1920, executed and delivered a contract for

deed (or sales contract) covering lot 14, block 6, Wynd-wood Park, a subdivision of Miami, to Patterson W. Reed and Flora E. Reed, his wife, for $4750.00 of which $500.00 was paid in cash with the balance payable $40.00 per month with interest over a period of five years. Reed and his wife immediately took possession of and occupied the property and they and their assignees have been in continuous adverse possession since date of said purchase on May 17, 1920, to the filing of this suit. The contract for deed was filed for record May 9, 1922.

The said original owner on Feb. 15, 1922, executed and delivered to G. L. Miller Bond and Mortgage Company a mortgage covering the same property to secure a note of $2500.00 payable in three years, which was filed for record March 13, 1922, or approximately eighteen months after the Reeds had purchased the property and gone into possession. It further appears that soon thereafter Reed died intestate and on Feb. 12, 1924, Flora E. Reed having married John R. Croft, the said Croft joined her in assigning said contract for deed to Harmon A. Bailey who on March 12, 1924, assigned said contract to' John G. Grennan who at the time this suit was filed on November 14, 1930, was in actual adverse possession under the said contract for deed, also a quit-claim deed which was executed to him (after making all required payments under the said contract) by the Keystone Loan & Discount Company to whom the original owners had deeded the property.

It appears that the title to the said mortgage being foreclosed, is by regular assignments vested in the complainant Marion Mortgage Company as Trustee. It also appears that Appellee Grennan and his predecessors under the contract had made all required payments to the Merchants Realty Company so long as it was the

owner and thereafter to the Keystone Loan and Discount Company as title holder to whom the contract for deed was also assigned on December 22, 1922, containing a provision requiring that all payments be made to said Keystone Company or their assigns.

It is obvious that by reasons of the various transfers, deeds, conveyances and assignments, that the issues are very complicated, and were it not for the very able briefs filed by each of the parties it would be most difficult of solution.

It appears undisputed that the Reeds had been in actual possession for about eighteen months at the time the mortgage here being foreclosed was executed and filed for record and were regularly making their payments to the Merchants Realty Company as holders of the legal title until the property was deeded to the said. Keystone Company on December 22, 1922, and thereafter to the latter company until said contract was assigned to Bailey on Feb. 12, 1924, who in turn on March 12, 1924, assigned same to the appellee—all of whom have been in continuous adverse possession up to the time of this suit.

The General Master in his findings stated that as to all payments to the original owner of about $1142.63 the complainant herein could not claim its mortgage as prior to or superior to the rights of the Reeds in such property, which rights passed with the regular assignment to defendant Grennan who would be entitled only to credit on the said mortgage of the amount of said $1142.63, paid by the Reeds on said contract for deed up to the date it was assigned to Bailey on March 12, 1924, as Grennan from said date would be held to constructive notice of the record of said mortgage. The Chancellor apparently declined to take this view as he entered an order dismissing the bill. It is observed that the Chancellor states

as reasons for dismissing the instant bill that the former assignee (Crozier) of said mortgage had brought suit to foreclose the same mortgage and that defendant Grennan intervened and set up the same facts as here pleaded and said suit was dismissed without prejudice. It seems that the view was taken that no new facts had been presented and those pleaded had been adjudicated.

It is observed that on December 12, 1922, the original owner, The Merchants Realty Company, by one instrument (1) deeded said property to the Keystone Loan and Discount Company, and (2) transferred his contract for deed (with the Reeds) to the said company. The same instrument also contained the following provisions: (a) that all payments when due on the contract for deed must be made to the said Keystone Company, and (b) when completed a deed conveying good title to the Reeds or their assigns must be executed and delivered by the said company; also contained a provision (c) that said instrument was being made subject to the said mortgage which the grantee (Keystone Company) agreed "to pay or cause to be paid."

The record shows that at the time of the completion of the payments by Grennan on June 17, 1930, the said Keystone Company executed and delivered a quit-claim deed to the said defendant Grennan. The said Keystone Company did not pay off the said mortgage when it fell due on Feb. 15, 1925, nor cause it to be paid nor apply any of the payments received from either the Reeds, Bailey or Grennan to the payment of said mortgage.

Appellant's first contention is that under Sections 5698 and 5699 C. G. L. of 1927, the contract for deed executed by the Merchants Realty Company to the Reeds was not entitled to record as no acknowledgment is shown thereon, and that therefore the record thereof constitutes no

constructive notice to the mortgagee or its assignee or to anyone, of any rights claimed thereunder, and therefore the said mortgage executed or assigned at any time when there was no constructive notice of the contract for deed would thereby establish the superiority of the lien of said mortgage over the contract for deed and the assignment thereof to Bailey and Grennan.

It is not necessary to determine here whether the contract for deed to the Reeds was acknowledged or recorded as the contract would be good not only as between the original owner and his vendees and between the original owner and the grantee of the title in which latter instrument the said contract for deed was also transferred. The said contract for deed was in fact effective though not recorded as against the subsequent mortgage which was executed *after* the property had been sold to said vendees, as it is clearly shown that said vendees had from date of purchase been in *actual adverse possession* of the premises and at the time of the execution and delivery of the mortgage and each subsequent assignment.

Actual possession is constructive notice to all the world or anyone having knowledge of said possession, of whatever rights the occupants have in the land. Such possession when open, visible and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises. Carolina Portland Cement Company vs. Roper, 68 Fla. 299, 67 So. 115; Tate v. Pensacola G. L. & Dev. Company, 37 Fla. 439, 20 So. 543; McAdams v. Wachab, 45 Fla. 482, 33 So. 702. This court also specifically held in the case of Crozier et al. v. Ange, 85 Fla. 120, 95 So. 426, that ''Where at the time property is mortgaged it is actually occupied by others than the mortgagor, the mort-

gagee is thereby put upon notice to inquire as to the rights of the occupants." 19 R. C. L. 421, Sections 201 and 202.

While a mortgagee is a "purchaser" to the extent of his interest in the mortgaged property and where it appears that he is bona fide purchaser for value and "without notice of any secret unrecorded claim or interest" in such property, he will be protected. Warner v. Watson, 35 Fla 402, 17 So. 654. There being, however, no charge of secrecy in the instant case the above rule does not apply especially where it is shown that the property at the time of the mortgage was occupied by others *than the mortgagor* under a contract for deed. If the mortgagee, though he does it passively, suffers another to purchase and expend money on land under an erroneous opinion of the title without making known his claims, he shall not afterwards be permitted to exercise his legal rights against such purchaser. Hagan v. Ellis, 39 Fla. 463, 22 So. 727; Price v. Stratton, 45 Fla. 553, 33 So. 644; Coram v. Palmer, 63 Fla. 116, 58 So. 721.

It is admitted that under the circumstances of this case the lien of the mortgage was not superior to the interest of the Reeds under the contract for deed as they were in possession of the property at the time the mortgage was given and recorded, for under the law neither the mortgage nor the record of the mortgage would be constructive notice to the Reeds so far as their rights are concerned. In fact, if the Reeds had remained in possession of the property and had never had any notice of the mortgage (as appears to be the case here) they could have continued to pay their original vendor or his known grantee all sums under the contract for deed in the absence of any knowledge that the mortgage was not being paid by the Keystone Company, and would have thus been

entitled to deed, to said property free and clear of any encumbrances as the said contract provides.

But the appellant contends that the same rights do not enure to the Reed's assignees, it being shown that subsequent to the recording of the said mortgage, the Reeds (Crofts) had assigned their contract for deed to Harman A. Bailey who forthwith assigned said contract and his rights thereunder to the defendant Grennan, and the mortgage *then being of record* ipso facto constituted constructive notice to Grennan and at which time there was still due under the said contract for deed more than enough to pay the amount due on the mortgage and that it should have been so applied to the payment of the mortgage.

The appellee Grennan insists, however, that in view of the fact that the Reed's contract for deed was superior to the lien of the mortgage at the time it was made that it so continued to be, and that his (Grennan's) rights are therefore superior to the lien of the mortgage not only because he holds as an assignee who is *in privity* with his assignor whose rights enured to defendant but because of continued and uninterrupted adverse possession. Appellant contends on this point that appellee is attempting to "tack an equitable interest on to an equitable interest," which he insists is not authorized in this state. In addition to what has already been said it seems clear that Grennan was, with notice to all the world, holding adversely not only against the mortgage (even though it was of record) from the time he went into possession under the contract for deed but what the relations here shown *privity* of contract and occupancy as between Grennan and his successive assignors of the contract for deed. "The term 'privity' means mutual or successive relationship to the same rights or property." Black's Law Dictionary; Ottenwser v. Scott, 47 Fla. 276,

37 So. 161; McDonald v. Gregory, 41 Iowa 513-516; Words and Phrases (2nd Ed.) 1217. There can be no serious doubt that there existed under the circumstances of this case such successive relationships to the contract for deed and also relation of parties as constitutes "privity," between the successive occupants of this property.

The question involved here is not that of perfecting title by adverse possession for the statutory period; but privity of possession and contract as will effect notice to subsequent mortgagees or purchasers.

Appellant also contends that the record of the transfer of the contract for deed by the Merchants Realty Company and the conveyance by that company of the legal title to the land to the Keystone Company would of itself constitute constructive notice to Grennan that the said Keystone Loan and Discount Company had assumed and agreed to pay the mortgage and with this constructive notice the defendant, Grennan, was charged either (1) with the duty of seeing that the money paid by him to the said Keystone Company *was applied* to the discharge of the said mortgage, or (2) charged with the duty of making *all payments* due and payable by him under his contract for deed *directly to the mortgagee* for that purpose, and that if the sums becoming due and payable by the defendant on the contract for deed after such constructive or actual notice were in excess of the amount due under the mortgage and the grantee of the title (Keystone Company) failed to apply the funds so received by it to the payment of the mortgage the defendant's interest in the land cannot under the law be relieved from the lien of the mortgage.

Admitting the logic expressed as to the above equitable principle, it seems that Grennan offered to do equity; for it is shown by the testimony that as soon as he was

notified of the mortgage by letter on March 25, 1926, when there was still due $3269.00 in payments to be made on the contract for deed, he immediately went to Fred W. Crozier, who then owned the mortgage, and told him that he would like to make the payments called for by the agreement for deed, directly to him to apply on the mortgage and that Mr. Crozier laughed at him and said that he wouldn't do that and further stated ''That the mortgage was due and that he wanted all his money in full, * * * so I left him and continued to make by payments to the Keystone Company, as I had been doing, and they received it.'' It was nearly a year thereafter (January, 1927) that Crozier filed suit to foreclose this mortgage, to which Grennan intervened and set up his defense. That suit was dismissed on April 21, 1930, without prejudice and thereafter on November 14, 1930, the Marion Mortgage Company (present complainant) to whom the mortgage has been assigned, instituted the present suit to foreclose the same mortgage against the same parties including Grennan who again answered the bill of complaint and in substance set up the same facts as a defense as in the former suit. The Court again dismissed the cause.

While it is shown that defendant, at the time of receiving notice of the mortgage, still owed $3269.00 on the contract for deed which is in excess of the amount of the mortgage, however, the payments could only be required to be made in monthly installments under said contract which were not changed by the mere fact that the terms of the subsequent mortgage called for payment of $2500.00 and interest in a lump sum on Feb. 15, 1925. 41 C. J. 374, Section 162. After Grennan received said notice of the mortgage on March 25, 1926, at which time the holder (Crozier) refused to accept monthly payments thereon, the said holder stood by during the

period when the hurricane of September, 1926, destroyed the house and the same was being rebuilt at considerable cost to Grennan, without further legal steps until the filing of the first foreclosure on January 28, 1927, and after defendant had offered to so pay it. The instant suit was filed on November 14, 1930, by the complainant herein who had apparently became owner by assignment as Trustee on September 29, 1927, with all the prior transfers showing of record. At the same time the instant suit was filed on November 14, 1930, the defendant had practically if not already completed his payments.

If the Keystone Company did not pay off the mortgage after receiving all the remaining payments it of course is still liable; and if it is not solvent the loss must fall on some one. The loss under these circumstances should fall upon the complainant as it took the mortgage with constructive if not actual notice of its infirmities and defenses, which might be interposed at the time it was as-assigned. Crozier, the holder, had not only refused tender of the contract payments when they would have paid off the mortgage, but stood by and acquiesced in all that was done both before and after the refusal of tender and thus allowed the Keystone Company to collect and pocket the installments which might have paid off the mortgage to which purpose it was the duty of the Keystone Company under its contract to apply them, or pay them otherwise. The failure cannot in equity be imputed to the appellee Grennan, for he offered to pay off the mortgage by applying his contract installments. The rule is that where one of two persons must suffer loss, and by a stronger reason in cases where one misleads the other, he who is the cause or occasion of that condition by which the loss has been caused or occasioned ought to bear it. Skivesen v. Brown et al., 101 Fla. 1384, 133 So. 564; Commerce Credit Company vs.

Parker, 101 Fla. 928, 132 So. 640; Continental Jewelry Company v. Weilbacker (La.) 136 So. 110; American Process Co. vs. White Pressed Brick Co., 58 Fla. 116, 47 So. 942, 16 Ann. Cas. 1054. See also 10 R. C. L., pages 695 and 697, sections 23 and 25. It is also a well recognized rule that where an estoppel is operative as between the original parties to the transaction it is also effective as to their *privies in contract;* and one who becomes a creditor of the party estopped after the estoppel arises, is likewise concluded thereby. 10 R. C. L. 837; 2 Pomeroy's Equity Jurisprudence (3 Ed.) Section 804. As a general rule an assignee of a mortgage has all the rights thereunder that his assignor had but no other or greater right, and this is especially true if the assignment is made after maturity of the debt secured. 41 C. J. pages 690 and 696. In this connection it may be well to note that the testimony shows that the original mortgagee, G. L. Miller Bond and Mortgage Company, apparently changed its name to that of Marion Mortgage Company, complainant herein, and that Fred W. Crozier, in whose name the former foreclosure was brought, was secretary or employee of both companies; apparently, therefore, there were no innocent assignees of the mortgage.

Another issue raised in this case, and ably presented in briefs of both parties, is as to what property interest was pledged in the mortgage executed *after* the contract for deed had been made and the vendees had long been in possession of the property without default. Under our statutes (Section 5725 C. G. L. 1927) a mortgage on real estate is held to be a "specific lien upon the property therein described." The status of the mortgagor's interest, mortgaged by the owner in this case, may turn upon the question as to what property rights were "conveyed" by the contract for deed, for the interest pledged

as security by the mortgage can be only such property rights or interest as remain after the contract for deed was delivered to the Reeds and they had gone into possession. In the case of Felt vs. Morse, 80 Fla. 154, 85 So. 656, this Court said that ''From the time the owner of the land enters into binding contract for its sale he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor.'' It is a general rule also that the legal title to property agreed to be conveyed remains in the vendor as security for the payment of the agreed purchase price, and the vendee is regarded as beneficial owner. Schmidt v. Kibben, 100 Fla. 1684, 132 So. 194. The purchaser in possession under executory contract also has an interest which he may sell. Harris v. Zench, Fla. 137 So. 135. In fact, the rights of a purchaser in possession of land under an unrecorded claim of title are protected against bona fide purchaser for value. Russell v. Scarborough, 155 Miss. 508, 124 So. 648; Crozier et al. v. Ange, 85 Fla. 120, 95 So. 426; 19'R. C. L. 421. It seems, however, that while a contract for the sale of land remains executory, and no deed has passed, that whatever rights remaining in the vendor may be the subject of a mortgage by him, though the terms of the mortgage given by the vendor cannot restrict the rights of the purchaser under the executory contract of sale. 41 C. J. 374. It also seems to be the rule that an *assignment* by the vendor of an executory contract for sale of real property vests in the assignee a lien upon the vendor's interest in the property not exceeding the purchase money unpaid on the contract. 39 Cyc. 1664-1665.

The Merchants Realty Company having on December 21, 1922, by deed conveyed the property in fee (also transferred the Reed contract for deed) to the Keystone Company subject to the mortgage to the Miller Bond

and Mortgage Company, the said Keystone Company therefore took not only the equity of redemption held by the grantee but also a lien upon the vendor's interest in that portion of the purchase money that remained unpaid on the contract, which grantor authorized grantee to collect.

Under the circumstances the mortgage when given could pledge only whatever equitable interest the vendor had in the property after making the executory contract to the Reeds.

Be that as it may, the Reeds and their assigns being in continuous possession at the time the mortgage was executed and when each transfer and assignment of the contract for deed was made, the defendant, Grennan, after offering to do equity by making payments to the holder of the mortgage, which was refused, has shown that the suit under the circumstances was without equity as against the defendant Grennan; and therefore the Chancellor committed no error in dismissing the bill. The final order of the trial court dismissing the bill is hereby affirmed and sustained.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the final order of the trial court dismissing the bill be and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., concurs in the conclusion.

ELLIS, J. (Concurring in the conclusion).—The allegations of the bill, averments of the answer and the evidence fully sustain the decree. The questions discussed are not involved. There was unbroken possession and claim of right from Reed to Grennan, and the mortgage

as to Reed originally was void, as much so as a deed of conveyance would have been. Then how was life breathed into it as against Grennan?