Bell, J.,
 

 dissenting. In my opinion the judgment entered by the Court of Appeals is erroneous insofar as'it reverses the judgment of the Court of Common Pleas.
 

 The amended petition filed by Maryland Casualty Company, hereinafter called Maryland (appellant here in cause No. 30384), against Gough and American Surety Company, hereinafter called American, was bottomed upon the claim that Maryland as surety for Devine, receiver, upon demand of the successor receiver, paid the sum of $40,996, by reason of the fact that during the course of the receivership one Gough, an agent appointed by the Court of Common Pleas,
 
 *323
 
 wrongfully abstracted and misapplied ■ that sum to his own use.
 

 It was alleged, that Devine repaid to Maryland the sum of $8,960.27, and that there was due from Gough the sum of $32,035.73, and from American the sum of $10,000, as surety upon a bond executed by Gough to Devine as receiver, for which amounts Maryland prayed judgment.
 

 Based upon the allegations of the amended petition that Maryland agreed to answer for any default of Devine only; that American agreed to answer for any default of Gough; and that Gough embezzled the money; payment by Maryland for the alleged default of Gough for whom it was not surety raises a serious question as to whether Maryland was not a mere volunteer in paying the money.
 

 Gough and American filed separate answers. Each answer contained a denial that Gough had appropriated to his own use the $40,996, or any other sum, and averred that Devine, the receiver, Maryland’s principal, had appropriated that sum to his own use.
 

 . The situation presented by the pleadings at the time of trial was aldn to the situation which arises where a plaintiff alleges injury by reason of defendant’s negligence, and defendant answers denying negligence upon his part and alleging that the injury was caused by the sole negligence of plaintiff or a third person. It has been held repeatedly that in such a ease there is only one issue made by the pleadings.
 

 The latest pronouncement of this court upon this proposition is found in the case of
 
 Taylor v. Cincinnati,
 
 143 Ohio St., 426, 55 N. E, (2d), 724.
 

 It is there said at page 430:
 

 “A claim on the part of a defendant that plahitlff’s injuries were proximateiv caused fey the negligent acts of a person .other lhan the defendant is but another
 
 *324
 
 form of a general denial. It does not ereate a separate issue and does not furnish any basis for the application of the two-issue rule.”
 

 Paraphrasing that language a claim on the part of Gough and American (defendants) that plaintiff’s (Maryland’s) injury was caused by the acts of a person other than Gough (defendant) is but another form of a general denial. Therefore there was only one issue made by the pleadings. The majority opinion says that another issue was raised by the evidence, to wit, whether Gough and Devine by their joint wrongdoing embezzled the money.
 

 The issue, made by the allegations of the amended petition that Gough embezzled this money and the denial of that fact contained in the answers, was properly submitted to the jury, and, when the jury returned a general verdict finding for Gough and American, that made an end of Maryland’s case. If not, assuming there were two issues, there being no question that the above issue was correctly submitted to the jury, what has become of the two-issue rule in Ohio?
 

 The majority of the court has concluded that if Gough and Devine by their joint acts embezzled this money then Maryland is entitled to recover against Gough but not against American, his surety. This creates in Ohio the anomalous situation that in some instances a fiduciary can be held liable for bread] of trust, but the surety on such fiduciary’s bond, given to seeure the faithful performance of that trust, can escape liability.
 

 The majority opinion says that the jury could have found that Gough and Devine jointly embezzled this money, and it is then said that the special charge offered by Gough and American and the general charge of the court upon that issue were prejudicially erroneous because the court, in substance, charged the jury that if it found that Gough and Devine jointly emboz
 
 *325
 
 zled the money Maryland was not entitled to recover. In other words, the jury was charged that if Gough and Devine by their joint wrongdoing embezzled this money they were joint tort-feasors and Maryland having paid for the wrongdoing of one joint tort-feasor could not recover from another joint tort-feasor.
 

 The case of
 
 Royal Indemnity Co.
 
 v.
 
 Becker,
 
 122 Ohio St., 582,173 N. E., 194, 75 A. L. R., 1481, presented this factual situation:
 

 John C. Webber recovered a judgment for injuries sustained by the joint and concurrent negligence of David Gordon, John A. Becker and F. William Becker. Royal Indemnity Company was indemnitor for Gordon and was also surety on a supersedeas bond given by Gordon to stay the execution of such judgment. After the judgment became final, Royal Indemnity Company paid the full amount thereof to Webber, whereupon he executed an assignment of the judgment to it. Royal brought an action to sell real estate owned by the Beckers to satisfy its claim.
 

 It was there held:
 

 “2.
 
 Where an indemnitor of a joint tort-feasor fully pays and satisfies a judgment obtained against its indemnitee and another, for damages resulting from their concurrent negligence, such indemnitor has no greater right than the indemnitee, and though upon payment it obtains an assignment of the judgment, may not enforce payment of the whole or any part thereof by the co-defendant of the indemnitee.”
 

 At pages 587 and 588 of the opinion, it was said:
 

 “It must be concluded that Gordon would have had no right whatever to enforce contribution by his joint tort-feasors, the Beckers. In our opinion the right of the indemnity company was no greater than that of its tort-feasor indemnitee, and that the attempt to accomplish by indirection what Gordon could not have done directly must fail. The judgment was paid in
 
 *326
 
 full, and it is immaterial whether it was paid by Gordon or by his indemnitor, the Royal Indemnity Company. Whether it was paid by reason of its obligation as indemnitor, or as surety upon the supersedeas bond, such payment operates as a complete satisfaction, just as it would have done if payment had been made by Gordon. Where the right of subrogation exists an assignment is unnecessary, for that is supplied by equity; but here there was no right" of subrogation and no additional right accrued by reason of the assignment of the judgment. ’
 

 That case has been followed and approved in several cases.
 

 The most that can be said in the instant case is that Devine and Gough were joint tort-feasors and the surety for one joint tort-feasor (Devine) paid the amount of the shortage and now is attempting to collect from the other joint tort-feasor.
 

 I am unable to distinguish the
 
 Becker case
 
 in principle from the instant case. .
 

 The majority concludes that Maryland may recover against Gough upon the doctrine of subrogation. That doctrine, frequently referred to as the doctrine of substitution, is a fiction of the law applied by courts of equity in order to do justice; however, it should never be applied where its application will work an injustice. See
 
 Black
 
 v.
 
 Chicago Great Western Rd. Co.,
 
 187 Iowa, 904, 174 N. W., 774;
 
 William Burford & Co.
 
 v.
 
 Glasgow Water Co.,
 
 223 Ky., 54, 2 S. W. (2d), 1027;
 
 Fraser
 
 v.
 
 Fleming,
 
 190 Mich;, 238, 157 N. W., 269.
 

 The evidence, in my view, makes inescapable the following conclusions:
 

 The relationship between Devine (the receiver) and Gough was that of principal and agent or master and servant. Devine was the principal or master and Gough the agent or servant. Every act of Gough was
 
 *327
 
 done at the express direction of Devine who embezzled the snm of $40,996 before discovery. His checks for that exact amount were found in the cash drawer. Not one syllable of evidence was adduced that Gough ever got one penny of this money. Over one million dollars (which was not strictly receivership funds), upon the direct order of Devine, passed through Gough’s personal bank account and every penny was accounted for except the amounts turned over to Devine, who in •his statement to Church (the successor receiver) completely exonerated Gough from any wrongdoing or any knowledge of his (Devine’s) wrongdoing. Gough was the man who finally made known the situation which led to the discovery of the embezzlement and at the time of trial was still in the employ of Church, the successor receiver, in the same capacity as he had served under Devine. Upon such a state of facts the doctrine of subrogation should not be applied to aid Devine or his surety.
 

 Let us for one moment compare the equities between Gough and Maryland.
 

 Gough was the agent or servant of Devine. Devine gave the orders, Gough obeyed them. The money which Devine ordered Gough to place in his personal account was money left with the receiver to purchase pass books from the owners thereof and therefore was not receivership funds. When Gough was ordered by Devine to turn over all or any part of that money to him Gough could do nothing but obey. Gough had no authority to question the actions of Devine and the record discloses that Devine told Gough that the money was being invested by Devine in other building associations. Maryland, on the other hand, as surety for Devine, had the right to exercise joint control, to countersign all checks, to examine the books at any time. Since Gough did as he was instructed, but Maryland failed to do what it
 
 *328
 
 had a perfect right to do, it would seem that Maryland should not be entitled to recover from Gough upon the basis of superior equities.
 

 The majority holding leads to the following result:
 

 Devine embezzles the sum» of $40,996. Maryland, his surety, pays that amount to the successor receiver, Church, thereby making the creditors whole. Devine, the embezzler, pays to his surety (Maryland) approximately $9,000, leaving him in possession of $32,000 of the embezzled funds. Maryland recovers the $32,000 from Gough making it whole and Gough who did not embezzle or receive a penny of the embezzled money pays the bill.
 

 In my view the application of the doctrine of subrogation in this case works an injustice only and therefore should not be applied.