126 So.2d 589 (1961)
LEE COUNTY BANK, a banking corporation, Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Inc., et al., Appellees.
No. 2108.
District Court of Appeal of Florida. Second District.
January 20, 1961.
Rehearing Denied February 15, 1961.
*590 Henderson, Franklin, Starnes & Holt, Fort Myers, for appellant.
Leslie D. Scharf and James E. Thompson, Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellees, A. Budrow Howe, Olive C. Howe and Metropolitan Life Ins. Co., Inc.
George E. Allen, Allen & Knudsen, Fort Myers, for appellees, A. Budrow Howe and Olive C. Howe.
ALLEN, Chief Judge.
The appellant instituted this action against the appellee-defendants, A. Budrow Howe and Olive C. Howe, his wife, seeking foreclosure of a mortgage which had been executed to it by McGregor Gardens, Inc., on a parcel of land which had previously been sold by McGregor Gardens, Inc. to the Howes pursuant to an unrecorded contract to purchase. The defendants answered alleging that they had no knowledge of the mortgage; that they had since paid McGregor Gardens, Inc., the full purchase price under the contract; and that they, the Howes, had entered into possession prior to the date of the execution of the alleged mortgage. The Metropolitan Insurance Company filed its answer adopting the defenses presented by the Howes. Both the plaintiff and the defendants moved for summary judgment with each party submitting affidavits and depositions in support of the motion. The lower court entered a summary judgment in favor of the defendants from which the plaintiff has appealed.
The essential facts, most of which are undisputed, can be best understood in a chronological sequence. On July 30, 1958, the defendants, A. Budrow Howe and Olive C. Howe, entered into a contract with McGregor Gardens, Inc., whereby the Howes agreed to purchase a lot in McGregor Gardens subdivision, and a home was to be erected thereon by McGregor at a total cost for the lot and house of $16,995. The Howes had paid $500 down on May 28, 1958, and they paid an additional $1,500 on July 31, 1958. Another payment of $7,000 was paid on September 15, 1958, at which time construction of the house was started. The contract of purchase has never been recorded.
Although the contract required the house to be completed within 90 days, the Howes had a bedroom suite set up in the house sometime between November 16 and November 22, 1958, but they did not move in at that time. On Sunday, November 23, 1958, the Howes moved their furniture into the house, slept in the house that night, and have resided in the house since that date. The Howes own two automobiles and Mr. Howe testified by deposition that at least one of the automobiles was parked in the driveway at all times during the week beginning on November 23, 1958.
Sometime prior to November 20, 1958, A.E. Benson, president of McGregor Gardens, Inc., applied to the plaintiff bank for a loan *591 of $10,000 to be secured by a mortgage on the property which had been previously sold to the Howes. On November 20, 1958, a representative of the bank visited the premises and took a photograph of the house. This representative, Mr. Norris, inquired of some workmen, who were completing the construction, and learned that they were employed by McGregor Gardens, Inc.
Norris reported to the bank that the property was unoccupied and the mortgage was executed by McGregor Gardens, Inc., to the plaintiff bank on November 24, 1958, and the mortgage was recorded on November 25, 1958.
As stated previously, the Howes moved into the house on the subject property on November 23, 1958, and continued living there up to the time the instant suit was brought. On January 19, 1959, the defendant, McGregor Gardens, Inc., executed a deed to the property to the Howes, which was delivered at the closing on January 31, 1959, and on the same date the Howes paid the balance of the purchase price without ever having received knowledge of the mortgage. Also on January 31, 1959, the Howes executed a mortgage on the property to Eugene Knight, Inc., which mortgage was subsequently assigned to the defendant, Metropolitan Life Insurance Company. This last mortgage was recorded during February, 1959. The plaintiff bank contends that at no time did it have actual knowledge of the Howes' rights in the property.
Stated simply, the plaintiff examined the premises on November 20, 1958, and found some construction still in progress. On November 23, defendants moved into the home with sufficient furniture to comfortably commence residing therein. On November 24, the record owner mortgaged the premises to the plaintiff. The Howes were actually in possession of the premises at the time of the execution of the mortgage.
A similar issue as to priority of rights between a subsequent mortgagee and a vendee in possession under an unrecorded contract for deed was presented an discussed in Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 763, 87 A.L.R. 1492. The original owner in that case, Merchants Realty Co., executed and delivered a contract for deed to Patterson and Flora Reed for $4,750, of which $500 was paid in cash with the balance payable $40 per month plus interest over a period of five years. The Reeds immediately took possession and either the Reeds or their assigns were in continuous possession until the time the action was filed in that case. The contract for deed was recorded on May 17, 1922.
On February 15, 1922, the original owner executed a mortgage on the same property to secure a note in the amount of $2,500, which was payable in three years. The mortgage was recorded on March 13, 1922, or nearly two months prior to the recording of the previously executed contract for deed.
Mr. Reed died intestate on February 12, 1924, and Mrs. Reed having subsequently married John Croft, joined with Croft in assigning the contract for deed to Bailey who, on March 12, 1924, assigned the contract for deed to Grennan who was in possession at the time the foreclosure action was instituted. The mortgage had been duly assigned in the meantime to Marion Mortgage Company who was seeking to foreclose the defaulted mortgage. The chancellor dismissed the bill for foreclosure and the mortgagee appealed.
The Supreme Court stated in regard to the rights of the parties:
"It is not necessary to determine here whether the contract for deed to the Reeds was acknowledged or recorded, as the contract would be good not only as between the original owner and his vendees and between the original owner and the grantee of the title in which latter instrument the said contract for deed was also transferred. The said contract for deed was in fact effective, though not recorded as against the *592 subsequent mortgage which was executed after the property had been sold to said vendees, as it is clearly shown that said vendees had from date of purchase been in actual adverse possession of the premises and at the time of the execution and delivery of the mortgage and each subsequent assignment.
"Actual possession is constructive notice to all the world or any one having knowledge of said possession, of whatever rights the occupants have in the land. Such possession when open, visible, and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises. Carolina Portland Cement Company v. Roper, 68 Fla. 299, 67 So. 115; Tate v. Pensacola, G., L. & Dev. Co., 37 Fla. 439, 20 So. 542, 543, 53 Am.St. Rep. 251; McAdow v. Wachob, 45 Fla. 482, 33 So. 702. This court also specifically held in the case of Crozier et al. v. Ange, 85 Fla. 120, 95 So. 426, that, `Where at the time property is mortgaged it is actually occupied by others than the mortgagor, the mortgagee is thereby put upon notice to inquire as to the rights of the occupants.' 19 R.C.L. 421, §§ 201 and 202.
"While a mortgagee is a `purchaser' to the extent of his interest in the mortgaged property and where it appears that he is bona fide purchaser for value and `without notice of any secret unrecorded claim or interest' in such property, he will be protected. Warner v. Watson, 35 Fla. 402, 17 So. 654. There being, however, no charge of secrecy in the instant case, the above rule does not apply, especially where it is shown that the property at the time of the mortgage was occupied by others than the mortgagor under a contract for deed. If the mortgagee, though he does it passively, suffers another to purchase and expend money on land under an erroneous opinion of the title without making known his claims, he shall not afterwards be permitted to exercise his legal rights against such purchaser. Hagan v. Ellis, 39 Fla. 463, 22 So. 727, 63 Am. St.Rep. 167; Price v. Stratton, 45 Fla. 535, 33 So. 644; Coram v. Palmer, 63 Fla. 116, 58 So. 721.
"It is admitted that under the circumstances of this case the lien of the mortgage was not superior to the interest of the Reeds under the contract for deed, as they were in possession of the property at the time the mortgage was given and recorded, for under the law neither the mortgage nor the record of the mortgage would be constructive notice to the Reeds so far as their rights are concerned. In fact, if the Reeds had remained in possession of the property and had never had any notice of the mortgage, as appears to be the case here, they could have continued to pay their original vendor or his known grantee all sums under the contract for deed in the absence of any knowledge that the mortgage was not being paid by the Keystone Company, and would have thus been entitled to deed to said property free and clear of any incumbrances as the said contract provides."
The above decision was followed in the disposition of a similar question in Scott et al. v. Simmons et al., 151 Fla. 628, 10 So.2d 122, wherein the purchaser, pursuant to an oral contract of purchase, paid the vendor, Simmons, $100 down payment, immediately took possession and began fencing the land on July 5, 1939. The purchaser had an abstract brought up to date on July 8, 1939, which disclosed an apparent satisfactory state of the title. Sometime between July 8th and July 29, 1939, the purchaser informed the vendor, Simmons, that he was satisfied with the title and was ready to close. On July 29, 1939, the deed to the property and the balance of the purchase price were exchanged.
*593 Meanwhile, on July 14, 1939, a mortgage was recorded which had been executed on June 27, 1925, by a prior grantor to secure a portion of the purchase price. The deed conveying the land to the vendor, Simmons, had contained no reference to the encumbrance. The mortgage holders, Mary C. Scott and her husband, brought a foreclosure action against Simmons and his wife, and against the purchaser from Simmons who had taken possession. The suit was dismissed and the mortgagees appealed.
In affirming the dismissal the Court held:
"The problem with which we are confronted is the relative rights of the vendee, who took possession under the verbal contract without knowledge of the mortgage and before it was recorded, and the mortgagee, who placed her mortgage on record before delivery and recordation of the former's deed. The genuineness of the possession by the appellee Simmons is not challenged and it is not even suggested that it was casual, occasional, temporary, equivocal or of such character as not to provoke inquiry. 8 Thompson on Real Property (Permanent Edition), Page 421, et seq. Being of this quality the possession was certainly notice to the mortgagee that the possessor had a real interest in the property and his rights, therefore, were not affected by the lien. The mortgagee was relegated for relief to the interest of the vendor which she could reach provided she gave actual notice to the vendee. Recording the instrument, after the commencement of the possession, did not relieve her of the necessity of informing him of its existence and of the default of the mortgagor if she intended her claim to attach to the amount owed by him to the vendor. See Thompson on Real Property, supra, page 424.
"Authority for this conclusion may be found in a decision of this court, Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 87 A.L.R. 1492, where the same principle was involved and where the facts in all essential respects correspond with those in the instant case. * * *"
As illustrated by the foregoing decisions, actual possession of real property, when open, visible, and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises. Pursuant to this rule it has been held that a mortgagee of real estate takes his security charged with notice of the equities of a third person in possession of the property at the time of the execution of the mortgage. First Federal Sav. & Loan Ass'n of Miami v. Fisher, Fla. 1952, 60 So.2d 496. And therefore, where at the time property is mortgaged it is actually occupied by others than the mortgagor, the mortgagee is thereby put on notice to inquire as to the rights of the occupants. Marion Mortgage Co. v. Grennan, supra.
It is undisputed in the instant case that at the time of the execution of the mortgage to plaintiff bank on November 24, 1958, and at the time of its recordation on November 25, 1958, the Howes were actually in possession of the property, having moved the remainder of their furniture in and setting up housekeeping on November 23, 1958. The record also supports the fact that the Howes had no actual knowledge at any time prior to the closing that their grantor had mortgaged the property to the plaintiff bank.
A factually similar situation was presented to the court in Fraser v. Fleming, 190 Mich. 238, 157 N.W. 269, 270, wherein the purchaser, under an unrecorded contract entered into on June 30, 1913, which required the vendor to construct a house, had moved part of his furniture in on October 1st or 2nd. The workmen completed the house, with the exception of painting on October 4th. The purchaser contended that he moved in on October *594 4th, but it was conceded by opposing parties that the purchaser was in possession of the premises by October 7th. In the meantime, the vendor was negotiating for a loan with the mortgagee and the terms of the loan were agreed to on October 4th and the mortgage was drafted that day. The mortgage was not acknowledged until October 7th and none of the money was paid over until October 8th.
The Supreme Court of Michigan, in holding that the vendee in possession under these circumstances should prevail over the mortgagee, stated:
"* * * The question therefore is whether their possession of the lot was of such a character as to amount to constructive notice when defendant parted with the money loaned on the mortgage. `The rule uniformly settled in this state is that payment must be made before notice in order to secure the title to the land purchased.' Palmer v. Williams, 24 Mich. 328; 39 Cyc. § 1763. And `possession of land by a contract purchaser is constructive notice of his rights.' Corey v. Smalley, 106 Mich. 257, 64 N.W. 13, 58 Am.St.Rep. 474.
"Defendant testified that the money loaned was paid to Trimble's creditors on the morning of the 8th, after the deed from Dodge had been recorded, and the deed was recorded at 10:45 a.m., as shown by the register's certificate. It is practically undisputed that the Carpenters had supper in the house on the evening of the 6th, and that their goods were in the house by the evening of the 7th, when they began living there regularly and continually. We cannot agree with the circuit judge that this possession was insufficient to operate as constructive notice. What more notorious and open possession could they have taken? Their goods were in the house, they were eating and sleeping there, and any one calling at the house would have found them there on the day the money was paid, and on the night before. * * * The possession by the Carpenters was in the best of faith, and not for the purpose of defrauding defendant; and, although it had not existed for any great length of time before the payment of the money, it had existed for a sufficient period to operate as constructive notice. Allen v. Cadwell, 55 Mich. 8, 20 N.W. 692; Miner v. Wilson, 107 Mich. 57, 64 N.W. 874; Oconto Co. v. Lundquist, 119 Mich. 264, 77 N.W. 950; Boyer v. Chandler, 160 Ill. 394, 43 N.E. 803, 32 L.R.A. 113; Phelan v. Brady, 119 N.Y. 587, 23 N.E. 1109, 8 L.R.A. 211. Constructive notice by possession is equal to constructive notice by record. 39 Cyc. § 1745. The mortgage was therefore void in equity as against the rights of the Carpenters, and is equally void as against complainant, who has succeeded to those rights."
The Howes, in the instant case, had moved their furniture into the house, slept there, took their meals there, parked two cars there, and had no other place to live at the time the mortgage was executed. The bank had been furnished a title opinion which specifically stated that the opinion was subject to the rights of any parties in possession. It is also undisputed that at no time prior to the real estate closing did the defendants Howe or Metropolitan Life Insurance Company, Inc., have actual knowledge of the existence of the mortgage to plaintiff, the Lee County Bank.
After a careful review of the record, considered in light of the principles stated herein, it is the opinion of the court that the decree of the chancellor should be and is affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.