**EVA L. LAFFERTY and JAMES LAFFERTY v. DOROTHEA M. DETWILER, a single woman.**

20 So. (2nd) 338          June Term, 1944
October 13, 1944          Special Division B
Rehearing granted November 7, 1944

*Frank E. Bryant, Lloyd A. Towle* and *Frederick J. Ward,* for appellants.

*Thomas H. Anderson,* for appellee.

PER CURIAM:

The decree appealed from is hereby

Affirmed.

TERRELL, BROWN, CHAPMAN and THOMAS, JJ., concur.

BUFORD, C. J., absent.

ON REHEARING GRANTED

BROWN, J.:

On March 29, 1943, appellee, plaintiff in the court below, filed a bill of complaint against the appellants alleging that on August 14, 1941 she was the owner of certain property at 6981 Indian Creek Drive, Miami Beach, Florida, and that on said date she entered into an agreement with the defendants, appellants here, by which she agreed to sell and the defendants agreed to purchase the property for the sum of $23,500.00, and that a true copy of said agreement was attached and made a part of the bill. That pursuant to said agreement the plaintiff put the defendants in possession of the property where they have ever since remained and have been collecting the rents, issues and profits thereon, but that the defendants had refused to perform said agreement to pay the plaintiff the amount due her thereunder, and had refused to surrender the premises and to account to the plaintiff for the rents and profits. The bill further alleged that the plaintiff would convey the property to the defendants by a good and sufficient warranty deed, subject to the encumbrances described in the agreement or any renewals thereof, upon the defendants complying with the terms of said contract,

or as may be ordered by the court. The prayer of the bill was that the defendants be required specifically to perform the agreement, or in the alternative that plaintiff be decreed to have a vendor's lien upon the property to the amount due her under said agreement, or that the defendants be required to deliver the possession of the property to plaintiff and account to her for the rents, issues and profits from the time that they received possession, together with damages for detention.

The copy of the "agreement for deed" attached to the bill bound the parties of the second part, the defendants, to pay to the plaintiff $7100.00 in installments beginning Jan. 15, 1942, and varying in amounts from $250.00 to $750.00 over a period of three years, and provided that the full balance remaining unpaid should become due on February 15, 1945, together with interest of 6 per cent per annum, payable on the whole sum remaining from time to time unpaid, the interest to be deducted from each payment as made. The defendants further agreed to pay all taxes, interest and insurance imposed upon said land subsequent to the year 1940; and they also agreed to assume and pay the unpaid balance on two mortgages on the property, the first mortgage being held by the Miami Beach Federal Savings & Loan Association, on which there was due $9,821.48, and the second mortgage being held by the C. I. T. Corporation, the unpaid balance on which was stated to be $1,996.15. Then followed the following paragraph:

"In case of the failure of the parties of the second part to make any of the payments herein designated, or any part thereof, or failure to perform any of the covenants on their part hereby made and entered into for a period of ten (10) days after maturity, this contract shall be forfeited and terminated, and the parties of the second part shall forfeit all payments made by them on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by her sustained: and the parties of the second part shall immediately become a tenant at will of the party of the first part and shall become liable to the party of the first part for a

monthly rental of Five Hundred Dollars ($500.00) per month, payable on the first day of each and every month; and in case of the nonpayment of such rent, the party of the first part shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action therefor."

This contract was duly signed and acknowledged by the respective parties on August 14, 1941.

Motion to dismiss was filed and denied and the defendants filed their answer to the bill, in which they admitted that the plaintiff was the owner and in possession of the premises described in the bill on August 14, 1941, and that the defendants went into possession of the property, but denied that they were indebted to the plaintiff in any amount whatsoever. They also denied that the plaintiff will or can convey the property as alleged in her bill. The answer then alleges that on February 18, 1942, the Miami Beach Federal Savings and Loan Association filed its bill in the circuit court against the plaintiff and others to foreclose its said first mortgage in the principal sum of $10,500.00, and that on June 26, 1942 decree of foreclosure was entered and all the right, title and interest of the plaintiff was foreclosed and barred and the property was sold to satisfy the decree and the said Federal Savings & Loan Association purchased the premises at such foreclosure sale, which sale was confirmed on July 8, 1942.

Mrs. Detwiler, the plaintiff, testified that the defendant Laffertys refused to execute the contract on the basis of $23,500. consideration and she finally agreed to close on the basis of $21,000, and at the time of the closing she received the sum of $121.00. She also admitted that the defendants, who had been renting the property from her, paid her four months prior to August 14, 1941, the sum of $1350.00 but she asserted that it had nothing to do with the contract; that the contract was closed on the basis of the assumption of the two mortgages and the agreement of the defendants to pay plaintiff the sum of $7,100.00, as outlined in the contract. She further testified that defendants had made no payments under the contract although she had made demands for a settlement.

Mrs. Lafferty, one of the defendants, testified that defendants entered into possession of the property under the contract and that the first mortgage foreclosure was commenced the following February, and that she and her husband surrendered possession to the first mortgagee because she was informed by the Bank that they could apply for a receiver under the terms of the mortgage unless the property was surrendered; that they moved out the first week in April; that the property was finally sold under foreclosure and the first mortgagee, the Loan Association, bought the property at the foreclosure sale and subsequently sold the same to her husband and herself, and delivered to them a special warranty deed. An employee of the Loan Association testified to taking possession of the property in April, 1942, together with the keys, the defendants moving out as testified by Mrs. Lafferty. The master, the Hon. William H. Malone, an able and experienced lawyer, found from the facts that the real consideration for the contract of sale by Mrs. Detwiler to the Laffertys was $18,917.63, which was the aggregate amount of the balances due on the two mortgages assumed and the $7,100.00 agreed to be paid the plaintiff.

The defendants introduced the deed of conveyance from the said Loan Association to them, made some ten days after the foreclosure, and the revenue stamps on the deed indicated a consideration of $11,500.00, whether paid in cash or on time with mortgage back was not shown.

The exhibits introduced before the master included the foreclosure proceedings, which showed that all of the parties, the present plaintiff and the defendants, and also the C. I. T. Corporation, the second mortgagee, and several other parties, were made parties defendant to the bill. The total amount due on the mortgage including attorney's fee, master's fee and costs, amounted to something over $11,000.00 and the Loan Association bid in the property for $10,000.00, the sale being confirmed July 8, 1943.

The master found that under the agreement between the parties the defendants were to assume and pay the two mort-

gages and that their failure to make the payments required to be made to Mrs. Detwiler and the mortgages brought about the foreclosure proceedings. The evidence did show that they made two monthly payments of $105.00 each, on the first mortgage installments falling due soon after the contract was made, but became in default by November, 1941. That the defendants knew that by defaulting in the payment of the mortgage, the Loan Association would foreclose. The bill for foreclosure was filed February 18, 1942. The master was of the opinion that the defendants designedly defaulted on the mortgage, knowing or believing that after foreclosure they would be able to purchase the property for the amount of the decree of foreclosure and thus freeze the plaintiff out of the $7,100.00 contracted to be paid by them, and also freezing out the C. I. T. Corporation's debt secured by the second mortgage. However, the record does not disclose any evidence of any agreement or understanding between the Laffertys and the Loan Association with regard to the foreclosure of the mortgage. At the Master's sale the plaintiff, first mortgagee, became the purchaser, and shortly after receiving Master's deed in July, 1943, sold and conveyed the property for an amount slightly in excess of the mortgage debt and costs of suit to the Laffertys.

The master in his report quoted from 4 Pomeroy's Equity Jurisprudence, 4th ed. Sec. 1410, page 3348, as follows:

"When the impossibility of a specific performance is disclosed at the hearing, and the suit was brought by the plaintiff in ignorance of such fact, the court will award the remedy of damages."

The master found that the plaintiff could not specifically perform her part of the contract, but that the contract created a confidential relation between the parties and that there were mutual duties to be performed, and that the defendants had failed to perform the duties imposed upon them, and that thereby a constructive trust resulted in favor of the plaintiff. The master's report is unusually well written and very persuasive, but the bill did not allege fraud, which is an allegation which must be exactly made and clearly proven.

Nor did the bill allege the existence of any fiduciary relation. The master correctly found the Laffertys were in duty bound by their contract to keep up the payments on the outstanding mortgages which they had assumed and also to pay Mrs. Detwiler the installments due her, the first of which fell due January 15, 1942, and that their failure to do so precipitated the foreclosure of the first mortgage.

The master recommended that a decree be entered in favor of the plaintiff declaring a constructive trust in her favor in the sum of $7,100.00, with interest at 6 per cent from January 15, 1942 and that plaintiff be granted a vendor's lien in the amount of the decree.

Exceptions to the master's report were overruled and the chancellor found that the defendants were indebted to the plaintiff in the sum of $7925.96, for the payment of which plaintiff had a lien upon the property involved together with the cost of the suit and master's fee, and that unless the same was paid within ten days the property should be sold by the master after giving due notice. The decree also required the defendant James L. Lafferty to pay the balance remaining unpaid on the mortgage note made by the plaintiff to the C. I. T. Corporation, and impressed a lien on the property to secure such payment. A petition for rehearing was filed and the court amended its final decree so as to eliminate the impressment of a line on the property to the extent of the amount due on the mortgage to the C. I. T. Corporation, but without prejudice to the plaintiff in further proceedings, to which the holder of such mortgage be made a party, to have the question of liability determined. Also, the final decree was amended so as to find the amount of the indebtedness presently due by the defendants to the plaintiff (there being no acceleration clause in the contract) to be the sum of $3359.54, with interest from the date of the decree, for the payment of which the plaintiff was given a lien upon the property involved in the suit, and the plaintiff was also given a lien for all installments of money falling due subsequent to the institution of the suit, and jurisdiction was retained for all purposes consistent with the enforcement of the decree. Defendants then took this appeal.

Appellants in their brief present two questions for our consideration. The first question reads as follows:

"Parties execute a contract to purchase real estate, agreeing to pay the purchase price in installments and assume two existing mortgages, go into possession and then default in the payment of the installments due on the first mortgage and the contract. The first mortgage is foreclosed and first mortgagee buys the property at the master's sale, and some time later sells the property to the contract purchasers by deed. Does such transaction revive the lien rights of the contract seller and entitle her to foreclose a vendor's lien, or to enforce specific performance against the property in the hands of the original contract purchasers, in the absence of allegations and proof of fraud or collusion?"

On the original hearing and on this rehearing appellants relied upon two former decisions of this Court, Murray v. Newsom, 111 Fla. 193, 149 So. 387, and Waldock v. Iba, 114 786, 153 So. 915, as affording sufficient grounds for the reversal of the final decree in this case. The headnote in Murray v. Newsom reads as follows:

"Where junior mortgage was extinguished in foreclosure of another mortgage, mortgagors re-acquiring title from purchaser at mortgage foreclosure sale did not inure to benefit of holder of junior mortgage."

This headnote must be construed in the light of the opinion and the facts of the case as therein stated. The facts in that case were that one Hanan and wife conveyed the property to Grey and wife in June, 1925. Grey and wife gave to Mickler a mortgage on the premises on October 12, 1925, which was recorded October 16, 1925. The Greys had executed a mortgage to Hanan on October 1, 1925, but it was not recorded until more than two months after the execution and recording of Mickler's mortgage. By a series of assignments the Hanan mortgage came into the hands of J. H. Murray in 1930, about three years after the foreclosure of Mickler's first mortgage. Mickler brought a bill to foreclose his mortgage on April 2, 1927, and Citizens Bank & Trust Co., who then owned the Hanan mortgage, was made a party defendant. Mickler's mortgage was adjudged to be a first lien

and Mickler became the purchaser at the foreclosure sale. He then conveyed the property back to the Greys, who had obtained a loan of $7000, from the Citizens Bank & Trust Company, secured by a mortgage on the property. The Greys used this money to purchase the property back from Mickler. Some three years after the Greys re-acquired title to the property from Mickler, Murray, the then owner of the Hanan mortgage, brought suit to foreclose the Hanan mortgage contending that *the lien* of the Grey mortgage to Hanan was not extinguished by the foreclosure proceedings, although Murray also was made a party to the foreclosure suit, the contention being that when the Greys re-acquired the title from Mickler it inured to the benefit of the holder of the Hanan mortgage. In the opinion this Court said:

"The doctrine that an after acquired title inures to the benefit of a former mortgagee does not apply. When the Greys re-acquired the title from Mickler in 1927 the lien of both the Hanan and Mickler mortgages had been extinguished by the foreclosure proceedings under which Mickler acquired the title. Of that condition of the record title Murray was fully advised by the record in August 1930, when he attempted to acquire the Hanan mortgage."

In the opinion, it is also said:

"The property which was subject to the lien by the Greys was sold under an order of court in a legal procedure to satisfy the lien of that mortgage as well as the lien of the Mickler mortgage. Mickler as the purchaser of the land at foreclosure sale acquired the Grey's title divested of the two liens. Acquiring the title from Mickler afterwards was no act of bad faith."

On the facts of that case, we think this holding was correct. Murray acquired the Hanan mortgage with notice that the lien of that mortgage had been extinguished several years prior to his acquirement of it. Under those circumstances his effort to foreclose the extinguished lien was properly denied. It had already been foreclosed.

The majority of the court, in the case of Waldock v. Iba, supra, were of the opinion that the facts in that case were not unlike those in the case of Murray v. Newsom, and the trial

court was reversed on the authority of the latter case. But neither of these cited cases are applicable to the situation presented by the facts in this case.

When this Court affirmed the decree of the court below in the case at bar, the members of the court participating in such affirmance were of the opinion that this case was governed by the case of Torreyson v. Dutton, 137 Fla. 638, 188 So. 905, wherein the two earlier cases above discussed were not mentioned. This omission may have been due to an oversight, or it may have been because the court thought they were not in point. The facts in the Torreyson case are somewhat different from those in the two earlier cases. If, however, there be any conflict between the Torreyson case and the two previous cases above discussed, we are of the view that the principle enunciated in the Torreyson case should control here.

In the Torreyson case, the Duttons, husband and wife, executed a mortgage to Charles C. Lacey on May 12, 1926. In the mortgage, the mortgagors promised and agreed to pay all taxes and assessments that might be imposed upon the property. Lacey assigned the mortgage and note to Blanche S. Torreyson and the latter assigned it to Douglas. While the mortgage and note were in the hands of Douglas, one Nason acquired a tax certificate and on September 23, 1931, filed suit to foreclose the lien of the tax certificate. Douglas was made a party to that suit but did not defend it. A decree was rendered in favor of Nason and the land was sold to satisfy the decree and a master's deed was executed to Nason. Thereafter the land was conveyed by Nason and his wife to Lowe and by him conveyed to Mollie Dutton, the original owner, on March 31, 1937. On January 22, 1938 Douglas re-assigned all his right, title and interest in the mortgage and note to Blanchard S. Torreyson, and she brought suit to foreclose the mortgage. In the opinion in that case this Court, speaking through the Chief Justice, said:

"The controlling question involved in this case is, whether or not the defendants Millie Dutton and her husband could set up the after-acquired title to defeat the foreclosure of the

mortgage executed by them at a time when they held title and which after acquired title had its origin by reason of the default of the mortgagors in their covenant to pay the taxes levied and to be levied against the property, or in other words, whether or not when Mrs. Dutton re-acquired title to the property she took such title subject to her prior mortgage.

"It may be stated as elementary law that a tax title acquired by foreclosure of a tax certificate as between the parties was superior to the mortgage and that the sale of the property under foreclosure of the tax certificate was a sale under the paramount lien creating a new and independent title and that such title was thereafter unencumbered by the prior mortgage *until* it became vested in the mortgagor.

"Under the terms of the mortgage, it was the duty of the mortgagor to pay the taxes and not to allow the same to become delinquent. The mortgagor committed a wrong against the mortgagee and against his covenant in the mortgage when he allowed the lands to become delinquent for nonpayment of taxes and the wrong in that regard resulted in the destruction of the title under which the mortgage was given.

"There is no showing in the record that either Nason or any subsequent grantees except Dutton was even in actual possession of the property. As hereinbefore shown, the deed from Lowe to Dutton was made and recorded March 31, 1937. This suit was filed in February, 1938.

"In Jordan v. Sayre, 29 Fla. 100, 10 So. 823, it was held:

" 'A mortgagor, or his grantees of the mortgaged premises, can not set up against the mortgagee, or his assignee, a tax title acquired at a sale for non-payment of taxes which it was the duty of the mortgagor, or those holding under him to pay.' "

In the opinion in the Torreyson case, the Court further said:

"The same principles should be applied in a case like that here under consideration as are applied where an owner in possession executes a first mortgage and later executes a second mortgage with covenant to pay the first mortgage and

thereafter suffers the foreclosure of the first mortgage, the purchase of the property by a stranger at foreclosure sale, and afterwards acquires the title under conveyance from one deraigning his title from the master's deed at the foreclosure sale. The foreclosure under such first mortgage would abolish the lien of the second mortgage on the property in favor of any subsequent purchaser who was not the original mortgagor, but when such original mortgagor acquires title deraigned from such foreclosure sale then he takes that title subject to the second mortgage. In Levy v. Winfree, Tex. Civ. App. 99 S. W. (2nd) 1043, in considering a case of that sort, the court said: 'Where property is subject to a first lien and a second lien, and there is a foreclosure of the first lien, notwithstanding such foreclosure is effective for the time being to cut off the second lien, if the original owner of the property, who executed the notes evidencing both liens and the deeds of trust securing both liens, subsequently, by purchase from the purchaser at the foreclosure sale, re-acquires title to the property, the property, upon such re-acquisition of title thereto, again becomes subject to the original second lien."

"We hold that no greater or different title passed by reason of the foreclosure of the tax lien evidenced by a certificate than that which would have passed by a valid tax deed under the certificate. If a valid tax deed had been applied for and had been issued under the certificate, the grantee of the tax deed would have thereby acquired a complete, new, independent grant from the sovereignty which would have barred or extinguished all prior titles and encumbrances of private persons and all equities arising out of them. See Hefner v. Northwestern Mutual Life Insurance Co., 123 U. S. 748, 31 L. Ed. 309, and cases there cited; 61 C. J. 290, Sec. 1795. But while such new and independent title results from the issuance of a valid tax deed, or from the foreclosure of a tax sale certificate, such new and independent title becomes ineffectual when it is again vested in a mortgagor whose mortgage remains outstanding and unsatisfied and the encumbrance is revived by such re-acquisition of title. Especially must this be true where the genesis of the

newly acquired title finds basis in the default of the mortgagor to respect and abide by the covenants contained in his mortgage."

The Torreyson case is based upon a sound and just principle and should be adhered to in cases where that principle is applicable. We think it is applicable here. It is true that the Laffertys did not acquire a legal title from Mrs. Detwiler. The relation created by the contract was that of vendor and vendee, which vested the vendees with an equitable title. Felt v. Morse, 80 Fla. 154, 86 So. 656. Mrs. Detwiler held the legal title to the property subject to two mortgages. She entered into a written contract with the Laffertys by which she sold them the property in consideration of their promise to assume and pay the two mortgages described therein, and also pay the vendor $7,100.00 in installments, and it further provided that when the purchasers had performed their part of the contract, the vendor would execute to them a good and sufficient warranty deed. The Laffertys were placed in possession of the property by Mrs. Detwiler and enjoyed the rents, income and profits thereof, but in a few months they allowed the mortgages to become in default, and also failed to pay the first two installments on the purchase price due the vendor. The first mortgagee foreclosed, acquired master's deed, and a few days later the Laffertys bought the property from the first mortgagee at a price slightly in excess of the amount due the first mortgagee as adjudicated, and took a special warranty deed from the first mortgagee. Thus by failing or refusing to carry out their contract with their vendor, they precipitated the foreclosure and acquired title for a considerably less sum than they had agreed to pay their vendor. Undoubtedly the foreclosure and master's deed gave the first mortgagee a title freed from the lien of the second mortgage and the vendor's lien, the holders of both liens having been made parties defendant in the foreclosure proceeding, but under the principle laid down in the Torreyson case, when the Laffertys acquired title from the first mortgagee, the property again became subject to Mrs. Detwiler's lien for the unpaid purchase price. To hold otherwise would be to allow the vendees to take advantage of their own dere-

liction. It was they who agreed to assume and pay, as a part of the purchase price, the mortgage which was foreclosed. It was their default which caused the foreclosure. They are therefore estopped to deny the existence of appellee's equitable lien merely because the foreclosure makes it impossible for appellee to now convey the legal title, which title they acquired from the purchaser at the foreclosure sale.

In 66 C. J. at page 1032, it is said:

"Since a purchaser in possession under an executory contract is estopped to dispute the vendor's title, it follows that under similar circumstances he cannot acquire and assert as against his vendor any adverse title to the property. This rule applies both at law and in equity, and ordinarily without regard to whether the vendor at the time of the contract had title to the property. The rule does not mean that the purchaser is absolutely precluded from acquiring an adverse title or that by so doing he will forfeit his rights under the original contract; but if he does acquire such a title it will inure to the benefit of the vendor, and he will only be entitled to reimbursement for his outlay. In a few jurisdictions the rule does not obtain."

See also Zirkle v. Hendon, 180 Ala. 209, 60 So. 834, which case was reviewed with approval in Moss v. Sperry, 140 Fla. 301, 191 So. 531. Counsel for appellee also cites Rhodes v. Wilson, 12 Colo. 65, 20 Pac. 746, and Pringle v. Waggoner, 110 Mich. 612, 68 N. W. 423, which appear to support our conclusion here.

Appellants do not contend that the foreclosure proceedings and subsequent deeds extinguish their personal liability on the contract with appellee. Their contention is that if appellee has any remedy at all, it is merely an action at law for a personal judgment on their promise to pay. But under the principle enunciated in the Toreryson case when applied to the facts here, not only did the debt for the purchase price survive, but the lien securing it was revived and re-attached to the property when it was conveyed to appellants by the purchaser at foreclosure sale. "Otherwise, contravening the intention of the parties, and violating equity and good con-

science, the vendee would keep the land without paying the purchase money." Zirkle v. Hendon, supra.

We have not overlooked the contention (not pertinent to either of appellants' statements of questions involved) with reference to the deed made by appellee to Seidenberg and Montague as trustees. The master found that this deed showed that it was made in accordance with a stipulation filed in court which so limited the deed that it did not deprive appellee of the ability to carry out her part of the sale contract had not the appellants defaulted; that the deed merely amounted to security for an assignment of the first four payments falling due under the contract. This deed was not referred to in the answer or counter-claim.

Nor have we overlooked McCaskill v. Dekle, 88 Fla. 285, 102 So. 252, cited by appellants; nor Morgan v. Easton, 59 Fla. 562, 52 So. 305; McKinnon v. Johnson, 54 Fla. 538, 45 So. 451, and Bryan v. Moore, 101 Fla. 31, 133 So. 338, but we do not consider these cases determinative of this case. Undoubtedly the general rule is that when a vendor puts it out of his power to convey the title, or waives his lien, he cannot enforce it.

This brings us to appellants' second and last question, which is based upon the forfeiture clause of the contract quoted earlier in this opinion. No basis for this second question was laid by the appellants in their answer or counter-claim.

The forfeiture clause provided that in case of default by the purchasers for a period of ten days, the contract would be forfeited and terminated, and all payments made by them should be retained by the vendor as liquidated damages, and in satisfaction of all damages by the vendor sustained, and that the purchasers should immediately become tenants at will of the vendor and liable for a monthly rental of $500.00 per month, and in case of non-payment of such rent the vendor would have the right to enter and take possession.

Appellants' second question, after setting forth the forfeiture clause in full, is: "Upon default by the purchaser, the seller brings landlord and tenant proceedings to evict pur-

chaser. County Judge dismisses suit on theory question of title is involved, and no appeal is taken. Are not the rights of seller under said agreement for deed terminated, except as landlord?"

The record shows that after default for ten days the plaintiff below gave the statutory three days notice and then brought suit January 24, 1942, in the county judge's court to evict the defendants for non-payment of rent. Thus the plaintiff did try to enforce the forfeiture clause in the contract, but the defendants frustrated this effort, by filing a plea to the jurisdiction, and also an answer, in which they alleged that they had entered into a contract (copy of which was attached) with the plaintiff on August 14, 1941, to purchase the described property; that they had made various payments under said contract on the first and second mortgages and on a chattel mortgage on the furniture, and had acquired an equitable interest in or equitable title to said property; that there was no landlord and tenant relationship between the parties; that no agreement had been entered into in which the plaintiff was described as lessor of the premises or the defendants as lessees; and that the relation of landlord and tenant did not exist when they were served with notice, nor were they aware of any basis for a claim of rent due by them to plaintiff, and that therefore the action involved a question of title and boundaries over which the court was without jurisdiction. On March 16, 1942, the county judge, after argument of counsel, made an order to the effect that the plea was well founded, and dismissed the cause.

Meanwhile shortly after the above action was begun, the foreclosure proceeding by the first mortgagee was instituted and was under way when the county judge dismissed the eviction case. Perhaps this was why Mrs. Detwiler took no appeal.

This judgment of dismisal by the county judge was necessarily based upon the holding that on the face of the plea the Laffertys had some sort of interest or title, legal or equitable, under the contract, which contract was still in effect, and that the relation of landlord and tenant did not exist; hence the county judge had no jurisdiction to proceed

further. This was the kind of judgment the Laffertys prayed for, and there being no appeal it is res adjudicata as between the parties. This judgment also necessarily implied this inasmuch as the Laffertys had made some payments under the contract, they had acquired an equity in the property, and Mrs. Detwiler had no right to proceed under the forfeiture clause and thereby create the relation of lessor and lessees. Under these circumstances, the Laffertys were estopped from raising this second question, nor does the record show that they attempted to do so in the court below.

For the reasons above pointed out, on this rehearing our original judgment of affirmance of the amended final decree here appealed from, is adhered to and so said amended decree stands affirmed.

BUFORD, C. J., TERRELL, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.