453 So.2d 1383 (1984)
WALDORFF INSURANCE AND BONDING, INC., Appellant,
v.
EGLIN NATIONAL BANK, Appellee.
No. AU-142.
District Court of Appeal of Florida, First District.
July 27, 1984.
Rehearing Denied September 6, 1984.
*1384 Dale E. Rice, Crestview, for appellant.
David L. Selby, Fort Walton Beach, for appellee.
SHIVERS, Judge.
Waldorff Insurance and Bonding, Inc. (Waldorff) appeals the supplemental final judgment of foreclosure entered against it in favor of Eglin National Bank (Bank) on a condominium unit. Appellant argues that the trial court erred in not finding its interest in the condominium unit superior to the liens of two mortgages held by the Bank. We agree and reverse.
Choctaw Partnership (Choctaw) developed certain properties in Okaloosa County by constructing condominiums. On June 8, 1972, Choctaw executed a promissory note and mortgage on these properties in the amount of $850,000. This indebtedness was later increased to $1,100,000. This note and mortgage was eventually assigned to appellee Bank on January 17, 1975. At that time, the principal balance remaining on this note and mortgage was $41,562.61.
Waldorff entered into a written purchase agreement with Choctaw for condominium unit 111 on April 4, 1973. Choctaw was paid $1,000 at that time as a deposit on Unit 111. The total purchase price of Unit 111 was to be $23,550. In April or May 1973, Waldorff began occupancy of the unit. Furniture worth $5,000 was purchased by Waldorff and placed in the unit. Waldorff continually occupied the unit for about 1 1/2 years thereafter, paying the monthly maintenance fee, the fee for maid service, the fee for garbage pick-up, and paying for repairs to the unit. At the time of the hearing in this case on February 21, 1983, the furniture was still in the unit, the utility bills and monthly maintenance fees were still paid by Waldorff, and Waldorff had the keys to the unit and controlled it.
On October 10, 1973, Choctaw executed a note and mortgage for the principal sum of $600,000 in favor of the Bank. Among the properties included in this mortgage was the condominium unit involved in the instant case, Unit 111.
On June 28, 1974, Choctaw executed yet another note and mortgage, this one in favor of the Bank for the principal sum of $95,000. This mortgage secured a number of units, one of which was Unit 111.
Choctaw was apparently a client of Waldorff, and in 1974, Choctaw owed Waldorff over $35,000 for insurance premiums. Choctaw agreed to consider the purchase *1385 price of Unit 111 paid in full in return for cancellation of the debt owed by Choctaw to Waldorff. Waldorff "wrote off" the debt, and Choctaw executed a quitclaim deed to Unit 111 in favor of Waldorff. The deed was recorded in March 1975.
In 1976, the Bank brought a foreclosure action against Choctaw, Waldorff and others. A final judgment of foreclosure was entered in September 1976, but that judgment did not foreclose Waldorff's interest in Unit 111. Instead, the 1976 final judgment explicitly retained jurisdiction to determine the ownership of Unit 111. A hearing was held on February 21, 1983. The issue at this hearing was whether Waldorff's occupancy, together with the purchase agreement, was sufficient notice so as to make Waldorff's interest in Unit 111 superior to that of the Bank. At this hearing, evidence was taken concerning the agreements between Choctaw and Waldorff and Waldorff's occupancy of Unit 111. There was evidence that condominium units other than 111 were also occupied and that many of these units were occupied by persons who had no legal interest in the units, e.g., persons invited by Choctaw to occupy the units for a time as part of Choctaw's marketing campaign.
The trial court entered a supplemental final judgment of foreclosure which found that Waldorff's occupancy of Unit 111 was "equivocal" because Choctaw allowed at least 8 other condominium units to be furnished and used for occupancy by various persons. The trial court also found that Waldorff did not pay the consideration promised for Unit 111 because the debt owed by Choctaw to Waldorff was used as a bad debt write-off for federal income tax purposes rather than being credited to Choctaw. The trial court found that "even if defendant could establish some right to Unit 111 by occupancy, defendant failed to pay the agreed consideration for the quitclaim deed and, therefore, the conveyance is void." Based on these findings, the trial court held the Bank's mortgage liens superior to Waldorff's interest.
A contract to convey legal title to real property on payment of the purchase price creates an equitable interest in the purchaser. Lafferty v. Detwiler, 155 Fla. 95, 20 So.2d 338, 343 (1944); Felt v. Morse, 80 Fla. 154, 85 So. 656 (1920). Beneficial ownership passes to the purchaser while the seller retains mere naked legal title. Arko Enterprises, Inc. v. Wood, 185 So.2d 734 (Fla.1st DCA 1966); Tingle v. Hornsby, 111 So.2d 274 (Fla.1st DCA 1959). Subsequent successors to the legal title take such title burdened with the equitable interests of which they have either actual or constructive notice. Hoyt v. Evans, 91 Fla. 1053, 109 So. 311 (1926).[1] In the instant case, it appears clear that the April 4, 1973, Agreement to Purchase entered into between Choctaw and Waldorff vested equitable title in Waldorff. Therefore, the interests acquired by the Bank pursuant to the October 1973 and June 1974 mortgages would be subordinate to Waldorff's equitable interest if the Bank had either actual or constructive notice of that interest. Scott v. Simmons, 151 Fla. 628, 10 So.2d 122 (1942); Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761 (1932); Lee County Bank v. Metropolitan Life Insurance Co., 126 So.2d 589 (Fla.2d DCA 1961).
In Blackburn v. Venice Inlet Co., 38 So.2d 43 (Fla. 1948), the court stated:
It is settled law in Florida that actual possession is constructive notice to all the world, or anyone having knowledge of said possession of whatever right the occupants have in the land. Such possession, when open, visible and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises.
*1386 Id. at 46. See generally 38 Fla.Jur.2d Notice and Notices § 7 (1982) and cases cited therein. In the instant case, Waldorff was in open, visible and exclusive possession of Unit 111 at the time of the making of the October 1973 and June 1974 mortgages.
The trial court found, however, that Waldorff's possession of Unit 111 was "equivocal" because other units in the condominium project were occupied by persons who had no interest in the units. We do not agree with this analysis. Although many of the condominium units were held by a common grantor, Choctaw, the units were separate parcels intended to be alienated individually. The mortgage executed on June 28, 1974, which secures both the $95,000 note and the $600,000 note of October 10, 1973, described the property mortgaged in terms of individual units, specifically including Unit 111. The status of other units within the condominium project, therefore, is irrelevant to the question of the possession of Unit 111. The issue in the instant case concerned only the rights of the parties involved in Unit 111, not the condominium project as a whole or any other individual units.
Appellee argues, however, that it would have been difficult to ascertain whether any person physically occupying any of the units in the project had a claim of ownership interest in the unit being occupied. Although we agree that it would be more inconvenient for a prospective lender to make several inquiries rather than a single one, we do not find this argument persuasive. We find the ancient, but oft-cited, case of Phelan v. Brady, 119 N.Y. 587, 23 N.E. 1109 (N.Y. 1890), to be instructive in this matter. On May 1, 1886, Mrs. Brady took possession of a tenement building containing 48 apartments occupied by 20 different occupants as tenants from month to month. Her possession was pursuant to a contract for sale secured for her by her attorney. Three of the apartments were occupied by Mrs. Brady and her husband, who kept a liquor store in part of the building. Mrs. Brady began collecting rents immediately upon taking possession of the premises. Mrs. Brady's deed, however, was not recorded until August 26, 1886, subsequent to the recordation of Phelan's mortgage which had been executed by the record owner of the property on July 23, 1886. The court stated:
At the time of the execution and delivery of the mortgage to the plaintiff, the defendant Mrs. Brady was in the actual possession of the premises under a perfectly valid, but unrecorded, deed. Her title must therefore prevail as against the plaintiff. It matters not, so far as Mrs. Brady is concerned, that the plaintiff in good faith advanced his money upon an apparently perfect record title of the defendant John E. Murphy. Nor is it of any consequence, so far as this question is concerned, whether the plaintiff was in fact ignorant of any right or claim of Mrs. Brady to the premises. It is enough that she was in possession under her deed and the contract of purchase, as that fact operated in law as notice to the plaintiff of all her rights. It may be true, as has been argued by plaintiff's counsel, that, when a party takes a conveyance of property situated as this was, occupied by numerous tenants, it would be inconvenient and difficult for him to ascertain the rights or interests that are claimed by all or any of them. But this circumstance cannot change the rule. Actual possession of real estate is sufficient to a person proposing to take a mortgage on the property, and to all the world, of the existence of any right which the person in possession is able to establish. Gouverneur v. Lynch, 2 Paige, 300; Bank v. Flagg, 3 Barb. Ch. 318; Moyer v. Hinman [17 Barb 137] 13 N.Y. [180] 184; Tuttle v. Jackson, 6 Wend. 213; Trustees, v. Wheeler, 61 N.Y. 88, 98; Cavalli v. Allen, 57 N.Y. [508] 517.
23 N.E. at 1110-1111. Moreover, cases citing Phelan v. Brady have stated that the possession involved there was not equivocal. Swanstrom v. Day, 46 Misc. 311, 93 N.Y.S. 192 (N.Y. Sup. Ct. 1905); Baker v. Thomas, 61 Hun. 17, 15 N.Y.S. 359 (N.Y. Sup. Ct. 1891).
*1387 We also agree with appellant that the trial court erred in finding that the conveyance of the property from Choctaw to Waldorff was void due to lack of consideration for the quitclaim deed. Although Waldorff may have erred in attempting to take a "bad debt" tax deduction after cancelling the debt Choctaw owed to Waldorff for insurance premiums, Choctaw was relieved from payment of that debt, and this constituted a valuable consideration flowing to Choctaw. Booth v. Bond, 56 Cal. App.2d 153, 132 P.2d 520 (Cal.Dist.Ct.App. 1942); see generally Dorman v. Publix-Saenger-Sparks Theatres, 135 Fla. 284, 184 So. 886 (1939); 17 C.J.S. Contracts §§ 74, 87 (1963).
The parties agree that the 1972 mortgage lien is superior to Waldorff's interest in Unit 111. Appellee, however, stated at oral argument that it did not disagree with the proposition that a proper application of the funds from the 1976 foreclosure sale of the rest of the condominium project should first satisfy the 1972 mortgage.[2] Our decision renders moot appellant's other points on appeal. Accordingly, the supplemental final judgment of foreclosure is reversed and the cause remanded for entry of a judgment consistent with this opinion.
REVERSED and REMANDED.
JOANOS, J., concurs.
BOOTH, J., dissents.
NOTES
[1] In Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 766 (1932), the court stated:

[W]hile a contract for the sale of land remains executory, and no deed has passed, whatever rights remain in the vendor may be subject of a mortgage by him, though the terms of the mortgage given by the vendor cannot restrict the rights of the purchaser under the executory contract of sale.
[2] The principal due on the 1972 note and mortgage is $41,562.61. The purchase price bid for the remaining mortgaged property at the foreclosure sale in 1976 was $750,000.