[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 3, 2011
JOHN LEY
CLERK

_____

No. 09-15732

_____

D. C. Docket Nos. 08-02321-CV-T-27, 07-BK-04394-KRM

In Re: J.H. INVESTMENT SERVICES, INC.,
f/k/a. Jackson Hewitt Investment Services, Inc.,

Debtor.

_____

MICHAEL ZUPPARDO,

Plaintiff-Appellant,

versus

BC PROPERTIES LIMITED, LLC,
STEVEN S. OSCHER,
Chapter 11 Trustee,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 3, 2011)

Before BARKETT and MARTIN, Circuit Judges, and HUNT,[*] Senior Judge,

PER CURIAM:

Michael Zuppardo appeals from the district court's order affirming rulings by the bankruptcy court which avoided his interest in a commercial condominium unit, from which he had operated a hair salon, as well as the proceeds from the sale of that condominium. Although Zuppardo had purchased this unit in full from bankruptcy debtor Jackson Hewitt Investment Services ("JHIS"), JHIS later again sold the unit to BC Properties Limited ("BC Properties"). After creditors filed involuntary Chapter 11 petitions against JHIS, the proceeds from the latter sale became part of the estate. The bankruptcy court granted summary judgment to Steven S. Oscher, the Chapter 11 Trustee ("Trustee"), allowing him, pursuant to the Trustee's "strong arm" powers under 11 U.S.C. § 544(a), to extinguish (or "avoid" as the statute puts it) Zuppardo's interest in the condominium unit.

On appeal, Zuppardo challenges the district court's order affirming that ruling and other related rulings by the bankruptcy court. For the following reasons, we affirm in part and reverse in part.

---

[*] Honorable Willis B. Hunt, Jr., Senior United States District Judge for the Northern District of Georgia, sitting by designation.

# I. BACKGROUND

On September 1, 1999, Zuppardo entered into an installment contract with JHIS and its Vice President Daniel L. Prewett, in which Zuppardo agreed to purchase Commercial Condominium Unit 19 in Beneva Clark Plaza (the "complex") in Sarasota, Florida. In addition to the contract, Zuppardo and JHIS entered into a purchase money note and a purchase money mortgage. Pursuant to the installment contract, Zuppardo acknowledged that Unit 19 was subject to an existing mortgage[1] on the complex and expressly agreed that the note and mortgage would not be recorded and that title would be held in escrow by Prewett. Upon full satisfaction of his payment obligations, however, Zuppardo would obtain full title to Unit 19 from JHIS. Although it is not entirely clear from the record, at oral argument, counsel for Zuppardo indicated, and counsel for the Trustee did not dispute, that Zuppardo fully satisfied his payment obligations under the installment contract before February 20, 2007.

On February 20, 2007, JHIS and related entities sold 14 condominium units in the complex to BC Properties, resulting in net sale proceeds of $302,376.37 (the "sale proceeds"). Notwithstanding JHIS's contract with Zuppardo, JHIS included Unit 19

---

[1]According to the record, AmSouth Bank held the mortgage on the complex including Unit 19. That mortgage was satisfied from the proceeds of the February 20, 2007, sale to BC Properties described *infra*.

in this sale. On February 26, 2007, BC Properties recorded a warranty deed evidencing this transaction in the public records of Sarasota County.

The closing firm handling the sale to BC Properties, Dunlap & Moran, P.A., initially held the sale proceeds. Dunlap & Moran was unable to locate an officer of JHIS to whom to distribute the sale proceeds. Dunlap & Moran also became aware of several claims being made to the sale proceeds, including one by Zuppardo.[2] As a result, on March 7, 2007, Dunlap & Moran filed a state court interpleader action, depositing the sale proceeds into the registry of that court.

On March 29, 2007, Zuppardo recorded an "Amended and Revised Satisfaction of Mortgage" in the public records of Sarasota County. In this document, JHIS "acknowledge[d] full payment and satisfaction of all obligations of Michael G. Zuppardo under . . . [the] Contract of Sale of Commercial Condominium Unit [19] (dated September 1, 1999), Purchase Money Mortgage (dated September 1, 1999), and Purchase Money Note (dated September 1, 1999)." The document was witnessed and notarized, and signed by Elizabeth George Prewett (acting under a power of attorney for her husband Daniel Prewett, the JHIS officer who had executed the

---

[2] After learning of the completed sale to BC Properties, Zuppardo's lawyer contacted Dunlap & Moran and asserted Zuppardo's interest in Unit 19. Zuppardo then filed a lawsuit on March 2, 2007 in state court against JHIS and Dunlap & Moran, seeking a writ of attachment on a portion of the sale proceeds. The record does not indicate the resolution of this lawsuit.

agreement with Zuppardo). On May 17, 2007, Zuppardo also recorded a "Notice of Redemption Rights" in the Public Records of Sarasota County, in which Zuppardo announced, *inter alia*, that he was "the equitable owner of Unit 19 at Beneva-Clark Plaza . . . ."

On May 25, 2007, several creditors initiated involuntary Chapter 11 bankruptcy petitions against JHIS and Prewett. The bankruptcy court appointed Oscher as the Trustee, and he removed Dunlap & Moran's interpleader action to the bankruptcy court, where it became an adversary proceeding within the Chapter 11 case. Dunlap & Moran then turned the sale proceeds over to the Trustee pursuant to an order by the bankruptcy court.[3]

In the adversary proceeding/interpleader action, the Trustee filed a cross-claim and a motion for summary judgment against Zuppardo, arguing that because Zuppardo never recorded any interest in Unit 19, the Trustee could avoid Zuppardo's unrecorded interest in the sale proceeds, pursuant to the Trustee's "strong arm" powers under 11 U.S.C. § 544(a). In response, Zuppardo argued (1) that he had in fact recorded his interest in Unit 19 before the commencement of the Chapter 11

---

[3] It also appears that, on April 5, 2007, BC Properties filed an eviction, ejectment and quiet title action against Zuppardo in Sarasota County Circuit Court. However, we could locate nothing in the record that indicates the result of that proceeding or whether it was dropped because of, or subsumed by, the bankruptcy proceeding.

proceeding, pointing to his "Amended and Revised Satisfaction of Mortgage," (2) that BC Properties did not have a properly recorded interest in Unit 19 because, in purchasing the condominiums, BC Properties had not complied with the notice provisions of the complex's Declaration of Condominium ("bylaws"), and (3) that Zuppardo had a right of redemption in all of the condominium units sold to BC Properties.

Without addressing Zuppardo's argument regarding the fact that Zuppardo had filed his satisfaction of mortgage prior to the institution of the Chapter 11 proceedings, the bankruptcy court granted summary judgment to the Trustee, concluding that Zuppardo had only an unrecorded equitable interest in Unit 19. Therefore, "[a]ny interest which Zuppardo claims in the Sale Proceeds is inferior to the Trustee's status as a judicial lienholder and bona fide purchaser for value" under 11 U.S.C. § 544(a)(l) and (a)(3), respectively. The bankruptcy court entered a final judgment avoiding Zuppardo's interest in Unit 19 and deeming the sale proceeds property of the estate. The bankruptcy court decided that the Trustee had "the ability to avoid any possible unrecorded equitable interest of Zuppardo in Unit 19" and that "[a]ny claims by Zuppardo to Unit 19 and the Sale Proceeds are inferior to the rights and interests of the Trustee." The bankruptcy court then ordered that "[a]ny

unrecorded equitable interest of Zuppardo in Unit 19 and the Sale Proceeds is hereby avoided by the Trustee and is of no force or effect."

The bankruptcy court also held that the fact that BC Properties had not complied with the complex's bylaws did not affect its title and that, while Zuppardo may have enjoyed redemption rights under the terms of the bylaws, he had not put up the funds necessary to exercise those rights.

Also in the adversary proceeding/interpleader action, BC Properties filed a cross claim against JHIS, claiming, *inter alia*, that JHIS had made fraudulent misrepresentations regarding the complex and the number of units at the complex that were under lease, that BC Properties had suffered injury because of those misrepresentations, and that JHIS had been unjustly enriched. On March 25, 2008, in the main Chapter 11 proceeding, the bankruptcy court approved, over Zuppardo's objection, a settlement agreement reached between the Trustee and BC Properties regarding BC Properties' cross claim. The agreement provided that BC Properties would receive $100,000 of the sale proceeds, the Trustee would confirm BC Properties' ownership of the real property, including Unit 19, and the Trustee would execute any additional documents reasonably requested by BC Properties to confirm BC Properties' ownership of and title in the real property.

In approving the settlement agreement, the bankruptcy court found it had "previously avoided Michael Zuppardo's asserted equitable interest in Unit 19. The Court hereby quiets title in BC Properties as to all 14 of the condominium units . . . ." The court consequently ordered Zuppardo to vacate Unit 19.

Zuppardo also filed a claim in the adversary proceeding, seeking to recover attorney's fees from the sale proceeds under the common fund doctrine. He argued that he was entitled to recovery because his March 2, 2007, lawsuit in state court effectively preserved the sale proceeds, thus conferring a substantial benefit on the Trustee and other creditors. The bankruptcy court granted summary judgment to the Trustee on this claim, finding that Zuppardo had failed to "satisfy all of the common fund doctrine requirements." Alternatively, the bankruptcy court found that, even if Zuppardo did satisfy the requirements, a common-fund claim was an unsecured claim that could not trump the priority scheme set out in the Bankruptcy Code.

Zuppardo appealed the bankruptcy court's ruling to the district court. After concluding that it enjoyed jurisdiction over Zuppardo's appeal, the district court affirmed the bankruptcy court. The district court noted that Florida law required that "a deed must be recorded in order to protect the grantee's interest in real property," and concluded:

It is undisputed that Zuppardo never recorded a deed or any other document evidencing his purchase of Unit 19 before March 29, 2007. There was no evidence that BC Properties had actual notice of Zuppardo's interest in Unit 19 before its transaction with JHIS closed on February 20, 2007.[4] In accordance with § 695.01(1),[5] BC Properties' warranty deed, recorded on February 26, 2007, vested it with title to Unit 19 superior to Zuppardo's interest in Unit 19. See Rice v. Greene, 941 So. 2d 1230, 1230-32 (Fla. 5th DCA 2006) (where two buyers purchased same property without notice, the first to record held superior title to property). The documents Zuppardo recorded after the recordation of BC Properties' warranty deed were ineffective as to BC Properties' title to Unit 19. See id.

The district court then held that, under the strong-arm provisions of 11 U.S.C. § 544, the bankruptcy trustee "has the power to avoid certain interests that burden the property of the estate." After finding that "the Trustee's interest in Unit 19 and the

---

[4] However, the record indicates that Zuppardo was in exclusive possession of the hair salon at the time of the sale. In Waldorff Ins. & Bonding Inc. v. Eglin Nat. Bank, 453 So.2d 1383, 1385 (Fla. App. 1st Dist. 1984) (quoting Blackburn v. Venice Inlet Co., 38 So. 2d 43 (Fla. 1948)), the court stated:

> It is settled law in Florida that actual possession is constructive notice to all the world, or anyone having knowledge of said possession of whatever right the occupants have in the land. Such possession, when open, visible and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises.

See also Kroitzsch v. Steele, 768 So.2d 514, 517 (Fla.App. 2 Dist.,2000); Ates v. Yellow Pine Land Co., 310 So. 2d 772 (Fla. App. 1st Dist. 1975); Carolina Portland Cement Co. v. Roper, 67 So. 115, 116 (Fla. 1914).

[5] Florida Statute § 695.01 (1), provides: "[n]o conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law."

Sale Proceeds was superior to Zuppardo's unrecorded equitable interest," the district court concluded that Zuppardo's interest "was avoidable under Section 544."

The district court also discounted Zuppardo's claims based on (1) the purported failure of BC Properties to comply with the condominium association's bylaws with respect to the sale of the condominium units, (2) Zuppardo's supposed redemption rights set forth in the bylaws, and (3) Zuppardo's arguments that he was entitled to a portion of the sale proceeds under a common fund theory.

## II. DISCUSSION[6]

### A. Zuppardo's Claim to Unit 19

For reasons that will soon become apparent, Zuppardo's claim to Unit 19 and his claim to the sale proceeds must be addressed separately. Regarding Unit 19, Zuppardo argues that the district court erred by affirming the bankruptcy court's summary judgment order authorizing the Trustee to avoid Zuppardo's interest in Unit 19. Zuppardo emphasizes that such avoidance was statutorily improper because Zuppardo recorded his interest in Unit 19 before the commencement of the

---

[6] We review legal conclusions by either the bankruptcy court or the district court *de novo* and findings of fact for clear error. In re Optical Technologies., Inc., 425 F.3d 1294, 1300 (11th Cir. 2005)

bankruptcy proceeding at which time the Trustee's power to step into the debtor's shoes is measured.

Before addressing Zuppardo's argument, this Court is compelled to first investigate whether the claim regarding ownership of Unit 19 concerned property of the bankruptcy estate so that the Trustee enjoyed standing to seek to avoid Zuppardo's interest. This Court reviews *de novo* the question of law whether certain assets are property of the bankruptcy estate. In re Witko, 374 F.3d 1040, 1042 (11th Cir. 2004). Further, because standing is a jurisdictional requirement, we must address it *sua sponte*, and Zuppardo's failure to raise the standing issue does not impede our ability to consider the issue for the first time on appeal. See Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 n.9 (11th Cir. 1993).

Standing presents a "threshold jurisdictional question of whether a court may consider the merits of a dispute." Elend v. Basham, 471 F.3d 1199, 1204 (2006). "[T]he question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." Flast v. Cohen, 392 U.S. 83, 99, 88 S. Ct. 1942, 1952, 20 L. Ed. 2d 947 (1968).

Given the facts described above, Zuppardo had purchased and did own Unit 19 prior to February 20, 2007, even though he had failed to record his interest. His

ownership interest was, at least prior to BC Properties' recording of its deed, superior to all others' except the mortgage holder AmSouth Bank, and that mortgage interest was ultimately satisfied. See *supra* note 2. JHIS was, of course, record owner, but, having paid JHIS fully under the terms of his installment contract, purchase money note, and purchase money mortgage, it is clear that Zuppardo would have prevailed in any dispute with JHIS regarding ownership of Unit 19.

On February 20, 2007, JHIS purported to sell Unit 19 to BC Properties, and, in a classic race to the courthouse, BC Properties was able to record its deed before Zuppardo recorded his satisfaction of mortgage. At that point, as it is clear that either Zuppardo or BC Properties would qualify as bonafide purchasers under the Bankruptcy Code and the Trustee lacked authority to undo either sale transaction regarding Unit 19, the dispute about who owned Unit 19 was between Zuppardo and BC Properties only. The Trustee, perhaps in an effort to reach a settlement of BC Properties' cross-claim in the adversary proceeding, chose to take BC Properties' side in that dispute. However, because Unit 19 had been sold twice to bonafide purchasers prior to the institution of the Chapter 11 proceedings, Unit 19 was not a part of the bankruptcy estate. Although both Zuppardo and BC Properties raised claims in the bankruptcy court related to Unit 19, the ultimate disposition of Unit 19 – whether it

12

ended up in the hands of Zuppardo or BC Properties – could not have affected the estate or the claims of any other creditor.

The filing of a bankruptcy petition creates an estate that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "This includes legal causes of action the debtor had against others at the commencement of the bankruptcy case." In re Icarus Holding, LLC, 391 F.3d 1315, 1319 (11th Cir. 2004). Pursuant to 11 U.S.C. § 323, if a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it. Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1292 (11th Cir. 2003). However, the trustee generally lacks standing to bring claims that belong solely to the estate's creditors, the outcome of which would not affect the bankruptcy estate or the rights of all other creditors. See Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972).

This Court has not broadly defined under which circumstances a bankruptcy trustee may assert creditors' claims in addition to claims of the estate. O'Halloran v. First Union Nat. Bank of Florida, 350 F.3d 1197, 1202 n.3 (11th Cir. 2003). However, in E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 985-87 (11th Cir. 1990), we held, in a decision expressly limited to the specific facts of that case, that a trustee lacked standing to bring an action against a brokerage firm on behalf of the

13

customer/creditors of a bankrupt securities dealer. In <u>Hadley</u>, the debtor sold mortgage-backed securities to its customers, and then purchased the securities through a brokerage house under the terms of a margin account that the debtor held at the brokerage house. The customers paid the debtor full price for the securities, but, in a Ponzi scheme, the debtor only partially paid the brokerage house for the securities and retained the remainder of the funds for its own use. Under the terms of the debtor's margin account, the brokerage house held the securities as collateral for the amount that the debtor owed the brokerage house on the securities, and when payment of that debt was not made, the brokerage house sold the securities to recoup its losses. The debtor filed for bankruptcy, and the bankruptcy trustee sued the brokerage house under a variety of legal theories to recoup the customer's expenditures on the securities.[7]

Under these facts, we held that the bankruptcy trustee did not have standing to assert the claims of the creditor customers. <u>Id.</u> at 985. In reaching this conclusion, we relied heavily on the Supreme Court's reasoning in <u>Caplin</u>, *supra*, noting that, similar to the circumstances in <u>Caplin</u>, the <u>Hadley</u> debtor had no claim against the brokerage house and the claims that were asserted were those of certain of the debtor's creditors only. <u>Id.</u> at 987.

---

[7] The facts and procedural history of <u>Hadley</u> are detailed at 901 F.2d at 980-83.

14

Likewise, in this matter, JHIS has no claim against Zuppardo or to Unit 19, and the avoidance of Zuppardo's interest in Unit 19 benefitted only BC Properties. See also In re Seven Seas Petroleum, Inc., 522 F.3d 575, 584 (5th Cir. 2008) (citing Caplin for the proposition that "the trustee has no right to bring claims that belong solely to the estate's creditors"); In re Bradley, 326 Fed. Appx. 838, 839 (5th Cir. 2009) (unpublished) ("It is well established that a trustee has no standing to bring tort claims that belong exclusively to creditors of the bankruptcy estate."); Williams v. Cal. 1st Bank, 859 F.2d 664, 667 (9th Cir. 1988); In re Ozark Rest. Equip. Co., 816 F.2d 1222, 1226-30 (8th Cir. 1987). Accordingly, as in Hadley, we hold that the Trustee lacked standing to seek avoidance of Zuppardo's interest in Unit 19 because the claim had no material relationship to the JHIS bankruptcy estate and the outcome benefitted only BC Properties. Further, while the outcome of the dispute between BC Properties and Zuppardo would determine which of the parties had an unsecured claim against the bankruptcy estate for the value of Unit 19, the claim would be essentially the same regardless of who pursued it.

Admittedly, BC Properties was a party to the adversary proceeding and likely advocated the bankruptcy court's ruling on its own behalf. However, even if BC Properties had itself brought a quiet title claim in the bankruptcy proceeding, a review

15

of our case law reveals that the bankruptcy court lacked jurisdiction to entertain such a claim.

Bankruptcy courts enjoy jurisdiction over "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11," upon referral by a district court. 28 U.S.C. § 157(a). "Thus, bankruptcy court jurisdiction exists, by reference from the district courts, in three categories of proceedings: those that 'arise under title 11,' those that 'arise in cases under title 11,' and those 'related to cases under title 11.'" In re Trusted Net Media Holdings, LLC, 550 F.3d 1035, 1039 (11th Cir. 2008) (citation and quotation omitted). "'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code. The 'arising in a case under category' is generally thought to involve administrative-type matters." Cont'l Nat'l Bank of Miami v. Sanchez ( In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) (citations omitted). With respect to those claims that are "related to cases under title 11," we have adopted the following language from the Third Circuit for determining whether a particular claim fits into this category:

> The . . . test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome

16

> could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 n19 (11th Cir. 1990) (quoting and adopting the Third Circuit's formulation from Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)); see Lawrence v. Goldberg, 573 F.3d 1265, 1270-71 (11th Cir. 2009).

As the ownership of Unit 19 is resolved entirely under state law, the bankruptcy code would not be involved in the resolution of the dispute. We have already determined that Unit 19 was not part of the estate and that the disposition of Unit 19 could not affect the estate or the rights of creditors outside of the dispute between Zuppardo and BC Properties. It is equally clear that the outcome of the dispute between Zuppardo and BC Properties would in no way alter JHIS' rights, liabilities, options, or freedom of action (either positively or negatively) or in any way affect the handling and administration of the bankrupt estate. We therefore conclude that the bankruptcy court lacked jurisdiction to entertain a claim regarding the ownership of Unit 19. The question of the ownership of Unit 19 is a matter that must be decided in state court.

*B. Zuppardo's Claim to the Sale Proceeds*

Turning now to the sale proceeds, which are clearly a part of the bankruptcy estate, this Court first notes that, having reviewed Zuppardo's arguments and the relevant law on the issue, we agree with the district court that Zuppardo has no cognizable claim to the interpleader funds under a common fund theory. We thus affirm that portion of the bankruptcy court's and district court's orders and will not further address that issue.

Additionally, although Zuppardo objected in the bankruptcy court to the Trustee's $100,000.00 settlement with BC Properties that came out of the sale proceeds, Zuppardo has not preserved that objection on appeal. As to the remainder of sale proceeds, it is not entirely clear from the record whether the bankruptcy court avoided – under Section 544 – all of Zuppardo's interest in those proceeds. In its order of September 30, 2009, affirming the bankruptcy court, the district court noted that the bankruptcy court granted summary judgment in favor of the Trustee on the Trustee's cross claim seeking to avoid Zuppardo's interest in Unit 19 and in the sale proceeds. The district court later stated, however, that the bankruptcy court denied Zuppardo's common fund claim to the sale proceeds "without prejudice to Zuppardo filing a general unsecured claim."

Whichever the bankruptcy court intended, we agree that Zuppardo would not have a secured claim to funds that BC Properties paid to JHIS. Even if the mortgage

18

satisfaction that Zuppardo recorded was effective to put the Trustee on notice as to Zuppardo's interest in Unit 19, it would not cover funds that the debtor received from another source. Nonetheless, we stress that we see no reason why Zuppardo would not have an unsecured claim to the sale proceeds and whatever other funds or property comprise the bankruptcy estate.

## III. CONCLUSION

The bankruptcy court's and district court's orders denying Zuppardo's interest in the interpleaded sale proceeds are AFFIRMED, recognizing that Zuppardo retains his position as an unsecured creditor. However, as the bankruptcy court lacked jurisdiction over the disposition of Unit 19, the orders avoiding Zuppardo's interest in Unit 19, quieting title to Unit 19 in BC Properties, and requiring Zuppardo to vacate Unit 19 are REVERSED. Finally, Zuppardo's motion to certify questions to the Florida Supreme Court, which questions all relate to notice in relation to a real estate conveyance, is DENIED as moot.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.